67 So.2d 345 (1953)
HOTARD
v.
FLEITAS, Inc.
No. 20100.
Court of Appeal of Louisiana, Orleans.
June 19, 1953.
Rehearing Denied October 19, 1953.
Writ of Certiorari Denied November 9, 1953.
*346 Samuel J. Tennant, Jr., New Orleans, for plaintiff-appellee.
Thomas Barr, III, New Orleans, for defendant-appellant.
JANVIER, Judge.
Plaintiff, Joseph L. Hotard, III, alleging that the defendant corporation is indebted to him in the sum of $1,600 for services rendered "between July, 1946 and July, 1947," and that, in a written agreement dated August 2, 1947, the indebtedness was acknowledged in writing, brought this suit against the corporation on October 11, 1951, praying for judgment against the corporation in the sum of $1,600, with legal interest from August 2, 1947, until paid.
The defendant corporation, by a plea of "improper cumulation of actions," prayed that plaintiff be required to elect whether his suit was based on a claim for services rendered or on a promissory note. This plea was overruled and defendant corporation answered, denying any indebtedness to plaintiff and averring that though plaintiff had performed services for the corporation, it was with the understanding that he would receive as compensation a certain specified share of the monthly earnings, and that there had been no such earnings and that therefore plaintiff was entitled to nothing. In that answer filed by the corporation, Sampson J. Pitre, Jr., the President of the defendant corporation, in his individual capacity, sought to make himself plaintiff in reconvention, and, alleging that he had furnished to plaintiff room and board from July, 1946 to July, 1947, and that the fair value thereof was $100 per month, prayed for judgment in reconvention in his favor and against the plaintiff in the sum of $1,300. Defendant prayed for trial by jury. The defendant then filed pleas of prescription of one year and of three years.
The plaintiff then, by rule nisi, called upon the defendant to show cause why judgment should not be rendered "on the face of the papers." This motion was overruled and, after trial, there was judgment based on a jury verdict in favor of plaintiff for $1,600, with legal interest from August 2, 1947. Nothing appears in either the verdict or the judgment concerning the reconventional demand, and there was no appeal from the judgment based on the failure to mention the reconventional demand.
We shall immediately dispose of the reconventional demand.
It is obvious that in a suit against a corporation the president of the corporation cannot, by reconventional demand, make claim against the plaintiff for an obligation alleged to be due by the plaintiff to him personally.
The record shows that, during the first ten months of 1946, Sampson J. Pitre, Jr., and Arthur Fleitas, as partners, conducted a business under the name of Martin's Model Shop. During July, 1946, the plaintiff, Hotard, having been released from the Armed Forces of the United States, came into contact with Pitre and Fleitas, and apparently from July to November, 1946, performed *347 services for the partnership Martin's Model Shop. During November, 1946, there was formed a corporation, the present defendant, Fleitas, Inc., and the stock thereof was divided thirty-seven shares to Fleitas, thirty-seven shares to Pitre, and twenty-six shares to Hotard. Pitre and Fleitas turned over to the corporation the machinery and other physical assets which had been used in the partnership, Martin's Model Shop, and Hotard was given two shares as compensation for his services which had been rendered up to that time. It is conceded that from the time of the organization of this corporation in November, 1946, until July, 1947, Hotard devoted his effortseight hours each day, for five to five and one-half days each week, in working for the corporation. The record does not show in just what capacity he performed his services but it was obviously as a clerk rather than as a laborer, or some other kind of employee.
By July, 1947, it had become evident that the corporation had not prospered, and, in fact, it appears that Hotard had drawn from the corporation only about $110 in cash and possibly Five or Six Hundred Dollars in payment for purchases made by him which were paid for by the corporation. At that stage he sought other employment outside New Orleans and a few days later returned to New Orleans and consulted with the other two stockholders and directors, Fleitas and Pitre, as to what could be done to reimburse him for services rendered and for $953 which he had loaned to the corporation in cash. As a result of those conferences there was drawn up a document which was signed by all three, Fleitas, Pitre and Hotard and which reads as follows:
 "Fleitas, Inc.
 Telephone Audubon 9771
 New Orleans 19, La.
"509 N. David Street
 August 2, 1947
"J. L. Hotard III loaned Fleitas, Inc. the sum of $953.00 on February 1947. It is agreed by the interested parties that this money be paid back as quickly as possible beginning with $53.00 being paid August 2, 1947 and the balance to be paid either in installments or in a lump sum if possible. "For services rendered by J. L. Hotard III during the time that he was working with Fleitas, Inc., from July 1946 to July 1947 he is to receive the sum of $1600.00 in installments; amounts depending on the surplus on hand in the treasury of Fleitas, Inc.
 "Arthur M. Fleitas
 J. L. Hotard III
 L. J. Pitre, Jr."
It should be stated here that the $953 referred to in the first paragraph of the document has been repaid in full to Hotard.
Plaintiff points to that document as an acknowledgment of the services rendered by him and an acknowledgment of the amount due to him by the corporation for those services. The corporation contends that the acknowledgment is not an official act of the corporation; that it could not be such an official act as it was executed without adoption of any resolution by the Board of Directors, and that, as a matter of fact, it was merely the individual act of each of the three parties who signed it, and that, although the three individuals may have made themselves liable to Hotard, that document cannot be pointed to as an acknowledgment by the corporation. The corporation therefore contends that the claim of Hotard, never having been acknowledged by the corporation, has been lost as a result of the prescription of one year in accordance with Article 3534 of our LSA-Civil Code, if he was a "workman", a "laborer" or a "servant", or by the prescription of three years as provided in Article 3538 of our LSA-Civil Code, if he was a "clerk" or other salaried employee.
Plaintiff maintains that, on the contrary, the document to which he points is an acknowledgment by the corporation and that therefore, as a result of Article 3544 of our LSA-Civil Code, his claim would be prescribed in ten years and therefore has not been lost by prescription.
In the first place, we have no difficulty in concluding that the document on which *348 plaintiff relies represents an act of the corporation itself and cannot be considered as evidencing merely the personal obligations of the three persons who signed it. The document is written on the stationery of the corporation. In the first paragraph it evidences an indebtedness to Hotard for money loaned to the corporation by him. We see no possible theory under which it can be argued that he, Hotard, one of the signers of the document, intended to make himself personally liable to himself for money which he had loaned to the corporation. The second paragraph acknowledges that Hotard performed services for the corporation, and again we say that we cannot see why he should personally acknowledge those services, nor make himself liable to himself therefor.
It is true that it is conceded that there was no resolution of the directors of the corporation authorizing that acknowledgment, and it is true that it has been held that to authorize the president of a corporation to sign such an acknowledgment there must be a resolution of the Board of Directors. Commercial Nat. Bank in Shreveport v. Henderson, La.App., 173 So. 790.
We think that the situation here, however, can be easily distinguished by the fact that here all three of the stockholders, who were the only directors, themselves acknowledged the indebtedness.
We cannot see why such an acknowledgment cannot be made by all of the stockholders who constitute the entire Board of Directors and among whom are found all of the officers of the corporation. Our conclusion is that the document was executed as and represents an acknowledgment by the corporation of the indebtedness to the plaintiff.
The question then presented is what was the effect of that acknowledgment. Did it merely interrupt the prescription with the effect that the prescription applicable commenced to run from the date of that acknowledgment, or did it terminate the original prescription, and make applicable the prescription provided for by Article 3544, which is effective in all cases of personal actions except those especially enumerated in Articles 3534 and 3538?
There is authority to the effect that where there is a mere interruption of prescription, the prescription which was originally applicable commences to run over again. This was recognized by us in White Bros. Co., Inc. v. Shinn, La.App., 160 So. 823, 824, in which we said:
"* * * There is a difference between the interruption of prescription and the substitution of a new or different prescription. Where there is interruption, the same or original prescriptive period still applies and merely begins to run again from the date of the interruption. But, where there is an acknowledgment of an account in writing, an entirely new prescription is introduced, depending upon the nature of the writing; that is, whether it be merely a written acknowledgment, in which case the ten years' prescription applies, or a promissory note, in which case the five years' prescription would apply. * * *"
As we have said, we think that plaintiff was employed as a "clerk" or salaried employee, and it seems to us that, under the facts which appear, the written acknowledgment had the effect of substituting the ten year prescription for the prescription which would otherwise have been applicable as provided by Article 3538, "for the salaries of overseers, clerks, secretaries".
Counsel for defendant, with great confidence, relies upon the decision of our Brothers of the Second Circuit, in Brown v. Succession of Laing, La.App., 26 So.2d 34. He says that the facts there cannot be distinguished from those which are found here. We are unable to agree. There the mother of Mrs. Frances White apparently was dying and the daughter, Mrs. White, wrote to the nurse who was attending her mother a note under which she, Mrs. White, *349 promised to pay the back wages due to the nurse. The mother then died. After more than a year had elapsed the daughter, Mrs. White, qualified as administratrix of the succession of the mother, and when claim was made by the nurse against the estate of the mother, a plea of prescription of one year was interposed. It was contended by the nurse that the promise of Mrs. White to pay her had interrupted the prescription of one year. The Court held that the promise of Mrs. White was her personal promise to pay and did not interrupt the prescription as against the estate of Mrs. White's mother, and we find no fault with that conclusion. The promise of Mrs. White was her personal promise and no doubt made her liable personally, but it did not interrupt prescription which was running against the estate of Mrs. White's mother. She did not sign the promise as administratrix of the estate. As a matter of fact, she signed it long before she became administratrix.
It is true that in that case the Court, after holding that the promise of Mrs. White had not had the effect of interrupting prescription, which was running in favor of the estate of Mrs. White's mother, went on to say that Mrs. White had alternatively contended that, even if her promise had interrupted prescription, the effect thereof was not to make the prescription of ten years applicable, but merely to make the original prescription commence to run over again.
In contending that the Laing case is authority for the view that even if the document relied on was an acknowledgment by the corporation, it would merely interrupt prescription with the result that the same prescription (three years) would commence to run from the date of the acknowledgment, counsel overlooks the fact that in the Laing case the perscription which was referred to was that which is provided by Article 3534 when the claim is for "wages" due to "workmen, laborers and servants".
Where there is a mere interruption of prescription, the running of the same prescription commences again at the termination of the interruption. But there is a special provision in Article 3538 under which the prescription provided in that article "ceases" from the time at which "there has been an account acknowledged in writing". Since the prescription ceases and a new prescription commences to run from the time of the acknowledgment, the new prescription is not that which was provided by Article 3538 but is the prescription which is provided by Article 3544. There is a vast distinction between the ceasing or termination of the running of prescription and the mere interruption. This, we think, is recognized by the Supreme Court in Henry Block Co., Limited v. Papania, 121 La. 683, 46 So. 694, and in the decision rendered by us in White Bros. Co., Inc. v. Shinn, supra.
Judge Saunders, in his Lectures on the Civil Code, at page 142, says:
"The cause that interrupts prescription destroys all the prescription already run and it begins to run de novo from the time of the interruption; a cause that suspends prescription does not annihilate the time that has already run, but simply stops it, and when the suspensive cause ceases the prescription resumes and the time before the suspension is added to the time when it begins to run again * * *."
Lest it be thought that the provision found in the last paragraph of Article 3538 has reference only to claims which are based on accounts for goods sold, we direct attention to the fact that the proviso is found not immediately following those paragraphs in Article 3538 in which are listed "accounts of merchants" and "accounts of retailers", but is found at the end of that article with the necessary result, we think, that it has application to all of the claims listed in the article. This was the view of our Brothers of the Second Circuit as set forth in the case of Dubose v. Bosworth, Gunby's Decisions (2 Cir. 1885) p. 39, wherein it was said that "all the debts mentioned in C.C. 3538 are treated as open accounts * * *."
*350 We think that it necessarily follows that, since the debt which was here recognized was one of those referred to in Article 3538, the prescription ceased to run as of the date of the acknowledgment, and the new prescriptionten yearswhich then commenced to run had not accrued at the time this suit was filed.
Our conclusion is that the claim of the plaintiff has not prescribed.
We find, however, the further contention that under the document itself, that is to say, the document of August 2nd which acknowledges the indebtedness of $1,600 to Hotard, it was stipulated that the indebtedness would be paid only out of surplus, if and when any surplus should appear. We do not find that the agreement so stipulated. It is definitely provided that $1,600 is due to Hotard and that it will be repaid to him in installments. It is only the amount of each installment which is made to depend on the appearance of a surplus. It is true that there is no evidence that there ever was a surplus, but we think that we need give no consideration to that fact because the record shows definitely that when it became apparent that the corporation had not been and was not going to be profitable, the other two who were interested therein, Fleitas and Pitre, divided among themselves the assets of the corporation and left Hotard completely out in the cold. Under those circumstances, surely he was justified in bringing his suit and in claiming that the corporation should pay him the amount of the acknowledged indebtedness.
Nor do we find error in the judgment awarding interest from August 2, 1947, the date on which the acknowledgment was executed. In Tulane Law Review, Vol. 6, page 616, "The Running of Legal Interest in Louisiana," appears the following:
"With the adoption of the Negotiable Instruments Law in Louisiana in 1904, interest now runs from the date of an instrument which provides for interest, but does not specify the date from which it is to run; where the instrument is undated, interest runs from issue. Where there is no stipulation for the payment of interest, the note bears legal interest only from its maturity."
In Article 1938 of our LSA-Civil Code, it is provided that:
"All debts shall bear interest at the rate of five per centum per annum from the time they become due, unless otherwise stipulated."
It is true that here the instrument did not expressly provide for interest and that it did provide that the amount of the principal which was due might be paid in installments, in other words, in the future, but that did not necessarily mean that the amount which was to be represented by those installments was not, as a matter of fact, already due. The amount mentioned was due for services already rendered and was therefore actually already due when the acknowledgment was signed. The granting of time for the payment of the principal did not alter the fact that the amount stipulated for was then due. We conclude from this that interest was due from the time the amount was admitted to be due.
Consequently the judgment appealed from is affirmed at the cost of appellant.
Affirmed.