662 So.2d 821 (1995)
Laverne Smith ROBERTS, et al, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
No. 27501-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1995.
*822 Gregory J. Miller and H. Dean Lucius, Jr., Baton Rouge, for appellant.
J. Bachman Lee, Monroe, for appellee.
Before SEXTON and NORRIS, JJ., and PRICE, J. Pro Tem.
NORRIS, Judge.
In this "miss-and-run" case, the district court sustained defendant State Farm's motion for summary judgment, denying uninsured motorist policy benefits for Laverne Smith Roberts, tutrix of the minor, Devin Smith. For the reasons expressed, we reverse and remand for further proceedings.

Factual and procedural background
Devin Smith's father, Charles Satcher, was driving his mother's Cadillac Deville south on Hwy. 167 in Ruston, Louisiana in February 1991 when an unidentified red car, perhaps a Nissan, allegedly pulled onto the highway and into his path. Satcher allegedly swerved to miss the car but lost control, went into a spin, and crashed into an oncoming Ford *823 pickup truck. Satcher died en route to Lincoln General Hospital. Neither the driver nor the owner of the red car was ever identified or apprehended.
The Cadillac was insured by a State Farm policy with $100,000 UM coverage. The policy provided coverage for accidents involving:
A "hit-and-run" land motor vehicle whose owner or driver remains unknown and which strikes (a) the insured or (b) the vehicle the insured is occupying and causes bodily injury to the insured[.] (emphasis added)
Ms. Roberts filed suit on behalf of Devin Smith, her minor daughter, for wrongful death and survival damages against State Farm on the UM policy. Acknowledging that a plain reading of the policy would deny her coverage because there was no impact, she moved for partial summary on the issue of UM coverage. In support she cited the version of R.S. 22:1406 D[1] in effect at the time of Satcher's accident. The statute provided as follows:
(d) Unless the named insured has rejected uninsured motorist coverage, the insurer issuing an automobile liability policy that does not afford collision coverage for a vehicle insured thereunder shall, at the written request of a named insured, provide coverage in the amount of the actual cash value of such motor vehicle described in the policy or ten thousand dollars, whichever is less, for the protection of persons insured thereunder who are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle because of property damage to the motor vehicle described in the policy arising out of the operation, maintenance, or use of the uninsured motor vehicle. The coverage provided under this Subsection shall be subject to a deductible * * *. The coverage provided under this Subsection shall not provide protection for any of the following:
(i) Damage where there is no actual physical contact between the covered motor vehicle and an uninsured motor vehicle, unless the injured party can show, by an independent and disinterested witness, that the injury was the result of the actions of the driver of another vehicle whose identity is unknown or who is uninsured or underinsured.
(ii) Loss of use of a motor vehicle.
(iii) Damages which are paid or payable under any other property insurance.
In support of her motion for summary judgment, Ms. Roberts provided three statements made to the police by eyewitnesses, and asserted that these were "independent and disinterested witnesses" to corroborate the miss-and-run. She also contended that § 1406 D(1)(d)(i) overrode the language of the policy and mandated coverage because of the witnesses. She also filed an affidavit by State Representative Jimmy Dimos of Monroe, the author of the 1990 amendment. In this, Rep. Dimos stated the purpose of his Act was to mandate miss-and-run coverage under UM policies for personal injury as well as for property damage, but that through inadvertence the amendment was placed in a Subsection dealing with property damage.
State Farm opposed Ms. Roberts's motion, urging that the coverage mandated by § 1406 D(1)(d) applied only to a policy which "does not afford collision coverage" but that the instant policy provided such coverage. It also urged that the Subsection's references to "actual cash value" and "protection of persons insured thereunder who are legally entitled to recover damages * * * because of property damage" proved that the miss-and-run provision was confined to claims for property damage. It further urged that a subsequent amendment, § 1406 D(1)(f),[2] specifically *824 mandates miss-and-run coverage for bodily injuries, thus indicating that in its prior form the statute did not mandate such coverage. Finally, State Farm moved to strike Rep. Dimos's affidavit as inadmissible to prove the intent of the legislature, citing Lieber v. Rust, 388 So.2d 836 (La.App. 2d Cir.1980).
The district court denied the motion to strike and sustained Ms. Roberts's motion for partial summary judgment. State Farm, however, applied for writs to this court. We held on October 29, 1993 that the district court erred in accepting Rep. Dimos's affidavit. We also reversed the partial summary judgment and remanded the case with instructions to consider the application of the 1990 and 1991 amendments to State Farm's UM policy.
After remand, Ms. Roberts resubmitted her motion for partial summary judgment; State Farm filed its own motion for summary judgment. They advanced arguments essentially the same as before.
By opinion of October 13, 1994, the district court first held that the summary judgment evidence did not show that the uninsured vehicle ever struck the decedent's car, so the policy itself did not provide coverage. It next held that under the 1990 version of § 1406 D(1)(d), miss-and-run coverage was mandated only when the insured's policy "does not afford collision coverage," but as the instant policy did in fact afford collision coverage, the miss-and-run provision did not apply. Finally the court held that the 1991 amendment, which would have mandated coverage for this accident, was prospective only. The court therefore rendered judgment denying Ms. Roberts's motion for partial summary judgment, granting State Farm's motion for summary judgment and dismissing the suit.
Ms. Roberts has appealed, urging the district court erred in granting State Farm's motion for summary judgment.

Applicable law
A motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Thornhill v. Black, Sivalls & Bryson Inc., 394 So.2d 1189 (La. 1981). The burden is on the mover to prove that no material fact issues exist. Schroeder v. Board of Supervisors, 591 So.2d 342 (La. 1991). Summary judgment is not appropriate for disposition of cases requiring a judicial determination of subjective facts such as motive, intent, good faith or knowledge. Penalber v. Blount, 550 So.2d 577 (La.1989); Watson v. Cook, 427 So.2d 1312 (La.App. 2d Cir.1983).
A valid insurance policy is a contract between insurer and insured, and has the effect of law between them. La.C.C. art. 1983; Reynolds v. Select Properties Inc., 93-1480 (La. 4/11/94), 634 So.2d 1180. However, policy language must yield to conflicting statutory law. Graham v. American Cas. Co., 261 La. 85, 259 So.2d 22 (1972); Malone & Johnson, 15 La.Civil Law Treatise (Insurance Law & Practice), § 4.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law must be applied as written. La.C.C. art. 9; La.R.S. 1:3, 1:4. However, when the language of a statute is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La.C.C. art. 10; Thomas v. Insurance Corp. of Amer., 93-1856 (La. 2/28/94), 633 So.2d 136. An ambiguous statute must be construed in a manner to impart the meaning intended by the legislature and to avoid absurd results. Lopez v. City of Shreveport, 449 So.2d 1184 (La.App. 2d Cir.), writ denied 452 So.2d 175 (1984). To aid in interpreting an ambiguous statute, the court may look to legislative history to discern the intent of the legislature. State, Dept. of Social Serv. v. Parker, 595 So.2d 815 (La.App. 2d Cir.1992).

Discussion
By her second assignment Ms. Roberts urges the district court failed to properly *825 interpret the statute and its bearing on the instant policy. Specifically she contends that § 1406 D(1)(d) is ambiguous as to whether bodily injury must be covered in miss-and-run accidents, as well as property damage. This contention has merit.
The purpose of § 1406 has always been to regulate uninsured motorist coverage in Louisiana. See, e.g., Graham v. American Cas. Co., supra; A.I.U. Ins. Co. v. Roberts, 404 So.2d 948 (La.1981). Individual policies which conflict with the statute must yield to its provisions. Graham v. American Cas. Co., supra. The 1990 amendment to § 1406 made specific provision, for the first time, for miss-and-run coverage in UM policies.
A plain reading of the statute, however, does not clearly indicate whether the legislature intended this coverage to apply only to property damage or to both property damage and bodily injury. The following passages suggest the intent is confined to property losses:
(1) "the insurer issuing an automobile liability policy that does not afford collision coverage "collision coverage affects only property losses.
(2) "coverage in the amount of the actual cash value of such motor vehicle"obviously refers only to property losses.
(3) "for the protection of persons insured thereunder who are legally entitled to recover damages * * * because of property damage to the motor vehicle "specifically affects only property damage.
(4) "Damages which are paid or payable under any other property insurance." again confines losses to property claims.
However, the statute also contains references that appear, from plain reading, to contemplate bodily injury as well:
(1) "unless the injured party can show" appears to be inappropriate if referring to property damage, and strongly suggests harm to a human being.
(2) "the injury was the result of the actions of the driver"a term like damage, property damage or cash value would have been chosen if only property losses were intended. In Eudy v. State Farm Mut. Auto. Ins. Co., 620 So.2d 405, 407 (La.App. 1st Cir.1993), the court stated in dictum that this provision encompassed damages for wrongful death.
In short, the statute is full of confusing references to two forms of recovery, and no plain reading will reveal whether only one or both were intended under the mandate. Interpretation of the statute, to deduce the true intent, is necessary. C.C. arts. 9, 10; Owen v. Department of Pub. Safety, 25,402 (La. App. 2d Cir. 1-19-94), 631 So.2d 32.
State Farm urges in brief that this ambiguity should be discounted because the initial statutory provision, applying to "an automobile liability policy that does not afford collision coverage," is unsatisfied; the policy on Mr. Satcher's car did in fact provide collision coverage. It is true the normal arrangement of insurance policies, wherein general provisions cover an event but exceptions or exclusions withdraw coverage, does not create ambiguity such as to require judicial interpretation. See, e.g., Bergquist v. Fernandez, 535 So.2d 827 (La.App. 2d Cir.1988). State Farm's reading, however, leads to the absurd consequence that a UM policy's inclusion or exclusion of collision coverage should have any bearing on the insured's bodily injury coverage. At this stage of the proceedings we cannot accept that the legislature intended to impose such an illogical requirement. The statute is ambiguous and requires interpretation.
With this said, however, we do not subscribe to Ms. Roberts's suggestion that § 1406 mandates a declaration that the instant claim, based on bodily injury and wrongful death, is covered. The appropriate procedure is to analyze the statute to discern the legislature's intent. Issues of intent are virtually never suitable for disposition by summary judgment. Penalber v. Blount, supra; Watson v. Cook, supra. Legislative intent may perhaps be proved by reference to legislative history. State v. Parker, supra.[3] *826 This, however, is a factual issue and inappropriate for summary judgment, on the record presented. La.C.C.P. art. 966. The proper resolution is to reverse the summary judgment that was granted in State Farm's favor, as the instant question of legislative intent has not and probably cannot be settled by summary judgment. The case will be remanded for further proceedings on this issue.
In light of this resolution, we will not consider Ms. Roberts's first assignment of error. Costs of appeal are assessed to State Farm.
REVERSED AND REMANDED.
NOTES
[1] Amended by La.Acts 1990, No. 677, § 1, effective September 7, 1990.
[2] Added by La.Acts 1991, No. 806, § 1, effective September 6, 1991. It states:

Uninsured motorist coverage shall include coverage for bodily injury arising out of a motor vehicle accident caused by an automobile which has no physical contact with the injured party or with a vehicle which the injured party is occupying at the time of the accident, provided that the injured party bears the burden of proving, by an independent and disinterested witness, that the injury was the result of the actions of the driver of another vehicle whose identity is unknown or who is uninsured or underinsured.
[3] On remand the district court might also consider the recognized purpose of the UM statute to promote full recovery for damages by automobile accident victims. See, e.g., Bond v. Commercial Union Assur. Co., 407 So.2d 401 (La.1981); Carona v. State Farm Ins. Co., 458 So.2d 1275 (La.1984).