734 So.2d 109 (1999)
Tony GILES
v.
Burl CAIN, Warden, Louisiana State Penitentiary, Richard Stalder, Secretary, Louisiana Department of Public Safety & Corrections.
No. 98 CA 0212.
Court of Appeal of Louisiana, First Circuit.
April 19, 1999.
Rehearing Denied June 29, 1999.
*110 Tony Giles, Angola, for Plaintiff/Appellee, Pro Se.
Andre Charles Castaing, Baton Rouge, for Defendant/Appellant, Burl Cain and Richard Stalder, et al.
Before: CARTER, C.J., SHORTESS, LeBLANC, WHIPPLE, and WEIMER, JJ.
*111 CARTER, C.J.
This is an appeal from a judgment rendered in a suit by Tony Giles, an inmate at the Louisiana State Penitentiary (LSP), contesting the result of an incident report that led to disciplinary action against Giles. Both Burl Cain (the warden of LSP) and Richard Stalder (the secretary of the Department of Public Safety and Corrections) upheld the decision. Giles sought judicial review of the adverse decision in the Nineteenth Judicial District Court. One of the commissioners of the Nineteenth Judicial District Court issued a report recommending reversal of the adverse decision, and the district court signed a judgment in accordance with the commissioner's recommendation. Defendants, Cain and Stalder, appeal the judgment of the trial court in favor of Giles.

FACTUAL AND PROCEDURAL BACKGROUND
Tony Giles is an inmate sentenced to the custody of the Louisiana Department of Public Safety and Corrections (DPSC). Giles is confined in LSP at Angola, Louisiana. On July 14, 1996, Giles and another inmate, Richard Badeaux, were issued an incident report for a "Threat to Security (Possible Violent Retaliation Due to Welching on a[D]ope [D]eal)." The incident report was prepared by Captain Richard Ducote who had received information from two confidential informants that Giles and Badeaux had been involved in a drug deal with an unnamed inmate from Camp J; Badeaux "welched" on the deal; and as a result, the Camp J inmate told Giles to spread the word that the Camp J inmate had placed a $50 contract on Badeaux's life.
The Disciplinary Board ordered an investigation of the incident report. After the matter was investigated, a hearing on the incident report occurred on August 5, 1996. The Disciplinary Board found Giles guilty because 1) the report is clear and precise; 2) the officer's version was more credible than the inmate's; 3) the inmate presented no evidence to refute the charges against him; and 4) the investigative officer's testimony was more truthful and accurate than the inmate's. Giles was sentenced to a custody change to maximum custody at Camp J Extended Lockdown because of the seriousness of his offense and the need to protect the institution, employees or other inmates.
Giles appealed the decision of the Disciplinary Board to Warden Cain, which appeal was denied. Giles further appealed the decision to the Secretary of the DPSC, which appeal was also denied on February 5, 1997. Giles timely filed a petition for judicial review pursuant to LSA-R.S. 15:1177. The review was assigned to a commissioner for the Nineteenth Judicial District Court for a hearing and a report on the commissioner's findings and recommendations. See LSA-R.S. 13:713.
After a hearing on October 27, 1997, the commissioner issued a recommendation for reversal of the decision of the Disciplinary Board. The commissioner reasoned that "[t]hreat to security [was] not a charge under any specifically defined rule." Moreover, the commissioner concluded that the record presented him did not support the charges against Giles. The commissioner recommended that the district court sign a judgment reversing the administrative findings at the disciplinary and secretarial levels; directing the DPSC to expunge the charge from Giles' record; and ordering that Giles' housing location be redetermined in light of the expungement of the conviction on the incident report. On November 17, 1997, the district court signed a judgment pursuant to the recommendations of the commissioner.
Cain and Stalder appeal the judgment in favor of Giles, asserting the following four assignments of error: 1) the trial court erred by not making a de novo determination of the findings and recommendations of the commissioner which were formally disputed by appellants; 2) the trial court erred by not indicating in its judgment or *112 in the record that it considered appellants' objections to the commissioner's recommendations; 3) the trial court erred in finding that an incident report for a threat to security was not authorized by the inmate's disciplinary rules; and 4) the trial court erred in reversing the decision of the DPSC because the trial court applied the wrong standard of judicial review to the decision of the DPSC.

PRELIMINARY ISSUE
Appellants note in their brief that "through a combination of errors by the district court and [appellants'] counsel, the judgment is not signed by the judge of the division to whom this case is assigned." Appellants do not object to the judgment on this ground because the error was perpetuated in part by their counsel; however, they are concerned that the judgment may be an absolute nullity.
The petition for judicial review filed by Giles was assigned to Division "I". There was an apparent error when the petition data was entered in the clerk's computer system and the matter was listed as having been assigned to Division "A". Accordingly, the citation which was issued in connection with the petition reflected an assignment to Division "A" and the judge assigned to Division "A", the Honorable Robert D. Downing. All of the subsequent pleadings prepared by appellants in this case reflected Division "A" as the division to which the matter was assigned. At the October 27, 1997 hearing before the commissioner, the commissioner stated that he would be submitting a recommended finding to the judge of Division "I". Although the caption on the November 17, 1997 judgment references Division "I", the judgment was signed by Judge Downing of Division "A". It is clear that the Honorable R. Michael Caldwell, the judge assigned to Division "I", neither considered nor acted on any pleadings, motions or judgments in this case.
We do not find that the judgment which was signed by Judge Downing of Division "A" is a nullity. LSA-C.C.P. arts. 2002 and 2004 set forth the grounds for nullity of a judgment. These grounds include the instances where the judgment was rendered by a court that lacks subject matter jurisdiction or the judgment was obtained by fraud or ill practices. Although the judgment was rendered by a judge in a different division from that to which the matter was originally assigned, Judge Downing still had jurisdiction over the subject matter, as did any of the judges in the civil and criminal divisions of the Nineteenth Judicial District Court. Further, the record is clear that the matter was allotted to Division "A" by a mistake and thus, the judgment was not obtained by fraud or ill practices.

TRIAL COURT'S REVIEW OF COMMISSIONER'S FINDINGS AND RECOMMENDATIONS
In their first two assignments of error, appellants contend that the trial court erred in failing to properly review the findings and recommendations of the commissioner before rendering judgment. After the commissioner issued his recommendation on November 3, 1997, appellants timely filed an Objection to Commissioner's Recommendation. The trial court, without holding a hearing, rendered a judgment on November 17, 1997, in accordance with the commissioner's recommendation. Appellants argue that the trial court improperly failed to conduct a de novo review of the commissioner's recommendation, and that this failure is evidenced by the lack of any reference to a de novo review in the November 17 judgment.
Appellants rely on Bordelon v. Louisiana Department of Corrections, 398 So.2d 1103 (La.1981), as support for their argument. However, Bordelon was decided prior to the 1987 amendment to LSA-R.S. 13:713, the statute which governs the duties and powers of the commissioners for the Nineteenth Judicial District Court.
*113 Currently, LSA-R.S. 13:713 C provides in pertinent part as follows:
(1) When a case is referred to a commissioner by rule of court or assigned to a commissioner by a judge of the Nineteenth Judicial District, or has been allotted to a commissioner because the proceedings arise out of incarceration of state prisoners, the commissioner shall receive all evidence and prepare a written report of his findings which shall contain the following elements:
(a) A statement of the pleadings.
(b) A statement of the facts as found by the commissioner.
(c) An opinion based on the pleadings and facts.
(d) A judgment as he determines should be rendered with the recommendation to the judge that it be made the judgment of the court.
(2) In such cases, the commissioner shall file his proposed findings and recommendations with the court, and a copy shall forthwith be mailed, postage prepaid, to all parties or their counsel of record.
(3) Any party, within ten days after transmittal of such copy, may traverse such findings or recommendations in writing in such manner as shall be specified by the rules of the district court.
(4) If exceptions are filed to the report within ten days, the judge may set them down for hearing and, at the most convenient time, may hear argument and decide the exceptions on the record as made before the commissioner.
(5) The judge may accept, reject, or modify in whole or in part the findings or recommendations made by the commissioner and also may receive further evidence or recommit the matter to the commissioner with instructions.
Prior to the 1987 amendment to this statute by La. Acts No. 599, § 1, subsection C(2)(d) provided that "[t]he judge of the appropriate division shall make a de novo determination of any findings or recommendations to which objection is made." (Emphasis added.) Through the 1987 amendment, this language was replaced with subsection C(4) and the language requiring a de novo determination was omitted. All matter that is omitted in an amended act is considered repealed. Vogt v. Board of Levee Commissioners of Orleans Levee District, 95-1187, p.12 (La. App. 4th Cir.9/4/96); 680 So.2d 149, 156, writ denied, 95-0779 (La.12/6/96); 684 So.2d 923. Therefore, we find that the trial court is no longer required to make a de novo determination of those findings or recommendations of the commissioner to which objections are made, although the trial court may make a de novo determination. While the current statute requires the trial court to consider the objections raised by a party to the commissioner's recommendation, the trial court has discretion whether or not to hold a hearing and/or make a de novo determination to decide the contested issues.
In this case, the judgment signed by the trial court states that the court considered any traversal that was timely filed in the record. Accordingly, the trial court properly performed its duty in reviewing the recommendation made by the commissioner. Assignments of error numbers one and two lack merit.

STANDARD OF REVIEW
The remaining assignments of error address the trial court's judgment reversing the decision of the DPSC. LSA-R.S. 15:1171-1177 provide the statutory authority for the administrative review procedure established and followed by the penal institution in this case. This procedure is designed to receive, hear, and dispose of "any and all complaints and grievances by adult or juvenile offenders against the state, the governor, the department or any officials or employees thereof..." and includes appeals of disciplinary actions. LSA-R.S. 15:1171 B; Rochon v. Whitley, 96-0835, pp. 4-5 (La.App. 1st Cir.2/14/97); 691 So.2d 189, 192.
*114 Judicial review of an adverse decision is available pursuant to LSA-R.S. 15:1177, and is confined to the record. Pursuant to LSA-R.S. 15:1177 A(9), the court may reverse or modify the agency decision only if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by error of law; (5) arbitrary, capricious, or an abuse of discretion or clearly unwarranted exercise of discretion; or (6) manifestly erroneous.
The trial court applies the manifest error standard of review in reviewing the facts as found by the administrative tribunal; the trial court applies the arbitrary and capricious test in reviewing the administrative tribunal's conclusions and its exercise of discretion. Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152, 1159 (La. 1984); Rochon v. Whitley, 691 So.2d at 192. When reviewing an administrative final decision in an adjudication proceeding, the district court functions as an appellate court. Further, an aggrieved party may obtain review of any final judgment of the district court by appeal to the appropriate court of appeal. On review of the district court's judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. See LSA-Const. art. V, § 5(C); Donnell v. Gray, 215 La. 497, 41 So.2d 66, 67 (1949); Eicher v. Louisiana State Police, Riverboat Gaming Enforcement Division, 97-0121, p. 5 n.5 (La.App. 1st Cir.2/20/98); 710 So.2d 799, 803 n. 5, writ denied, 98-0780 (La.5/8/98); 719 So.2d 51.

VALIDITY OF THREAT TO SECURITY CHARGE
Appellants contend that the trial court erred in finding that threat to security was not a charge under any specifically defined disciplinary rule. The Disciplinary Board concluded that threat to security was a valid charge on an incident report which warranted disciplinary action. We agree.
The definitions section of the Disciplinary Rules and Procedures for Adult Inmates (1993 edition) defines disciplinary report as "a report on the approved form filed by an employee who has reason to believe of his own knowledge that an inmate(s) has violated one or more disciplinary rules. Disciplinary Reports may be heard by the Disciplinary Officer or the Disciplinary Board."
Incident report is defined as follows:
Report on the approved form filed by an employee describing an instance of planned or committed misbehavior (usually filed when the information is obtained through sources other than the reporting employee's firsthand knowledgesources such as confidential informants, other inmates, or nonemployees), or to describe planned or committed misbehavior that may not be defined under a specific rule description. In addition, a document that may be used to review the appropriateness of a custody or classification assignment.
Incident Reports are heard by the Disciplinary Board.
Clearly, the incident report was defined in the Disciplinary Rules to cover conduct which does not violate a specific disciplinary rule, but poses a disciplinary threat to the institution. Clearly, being involved in a "dope deal" is a threat to security; and possible retaliation resulting from "welching" on a "dope deal" also falls under this category. Accordingly, we cannot say the board was arbitrary and capricious in concluding that the threat to security posed by being involved in a "dope deal" and the alleged possible retaliation due to "welching" on a "dope deal" is a valid subject of an incident report subjecting Giles to disciplinary *115 action. Therefore, the trial court erred in reversing this finding by the board.

FACTUAL SUPPORT FOR GILES' ALLEGED THREAT TO SECURITY
Because we find that threat to security was a valid charge, we must determine whether the facts presented by appellants were sufficient to support the threat to security charge. Appellants supported their charge against Giles with two confidential informants' reports and investigative reports from prison employees. These reports established that Giles became engaged in an argument about his involvement in some drug deal with inmate Badeaux and an unnamed inmate from Camp J; Giles told the Camp J inmate that Badeaux "welched" on the deal; and the Camp J inmate told Giles to spread the word that the Camp J inmate had placed a contract on the life of Badeaux. The board determined that there was sufficient evidence to support the threat to security charge made against Giles. We cannot say this determination was manifestly erroneous.
Certainly, the security of a penal institution is threatened when inmates engage in "drug deals" and more so when death threats are involved. This threat is heightened when one of the inmates involved in the drug deal blames another for "welching" on the deal, especially when this "finger-pointing" leads to the placement of a contract on the life of an inmate. Accordingly, we find the trial court erred in reversing this finding by the board.

CONCLUSION
For the reasons set forth in this opinion, the decision of the trial court is reversed and the decision of the Disciplinary Board is reinstated. Costs are assessed against appellee, Tony Giles.
REVERSED.
SHORTESS, J., dissents with reasons.
SHORTESS, J., dissenting.
In Wolff v. McDonnell, 418 U.S. 539, 554-55, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974), the United States Supreme Court stated, "There is no iron curtain drawn between the Constitution and the prisons of this country." Under the Disciplinary Rules at issue here, a prisoner may be disciplined, and thus lose privileges and good-time, based on nothing but hearsay, and may be found guilty of being "a threat to security" when that offense is nowhere defined in the Disciplinary Rules. In my opinion, these Disciplinary Rules cannot pass constitutional scrutiny.
Defendant was found guilty of being a threat to security based on the reports of three unnamed inmates. The only guarantee of reliability of a confidential informant's hearsay testimony found in the Disciplinary Rules is that the informant must not have been unreliable in the past and must have legitimate knowledge of the incident. The attestation of reliability in this case, however, was made by the accusing employee.
The "Posted Policy" under the Disciplinary Rules is that policies must be distributed and posted so that inmates are placed on notice as to what behavior is forbidden. Nowhere are inmates informed of what conduct constitutes being a threat to security. A penal statute must describe unlawful conduct with sufficient particularity and clarity that ordinary persons of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto. U.S. Const. Amend. XIV; La. Const. art. 1, § 13; State v. Lindsey, 310 So.2d 89, 90 (La.1975). I agree with Commissioner Bergeron that DPSC "has failed to properly define the circumstances under which a prisoner is subject to a penalty of loss of 30 days diminution of sentence and a second penalty."
Finally, I do not believe the confidential informants' statements, when read together, show that defendant was engaged *116 in a "dope deal" or made a death threat to anyone. At best, they show that defendant, Badeaux, and an unnamed Camp J inmate were arguing at the fence, that Badeaux refused to give some drugs to the Camp J inmate, that the Camp J inmate considered this welching on a dope deal, and that the Camp J inmate then threatened to put out a contract on Badeaux's life and asked defendant to disseminate the threat. There was no evidence that defendant was actually involved in the "dope deal" or that he ever threatened anyone.
I would affirm the decision of the trial court, and I respectfully dissent from the majority opinion.