JjDOUCET, Chief Judge.
Plaintiffs, Alton C. and Loretta P. Simmons, appeal a judgment of the trial court, signed May 30, 2000, dismissing their claims against Defendant, Southern Energy Homes, Inc. We reverse the judgment dismissing Plaintiffs’ suit against Southern Energy Homes, Inc., and remand the case for further proceedings.
FACTS
Plaintiffs purchased a mobile home from Kite Brothers, Inc., in DeRidder, Louisiana, on December 9, 1996. The mobile home was manufactured by Southern Energy Homes, Inc. of Texas (Southern). The home was delivered on December 15, 1996, and Plaintiffs occupied the home. Shortly thereafter, they began to notice numerous defects in the mobile home and sought legal assistance.
On October 28, 1997, Plaintiffs’ counsel sent a letter to Southern demanding rescission of the sale under the redhi-bition articles in the Louisiana Civil Code. Thereafter, on December 10, 1997, Plaintiffs instituted suit against Southern for “BREACH OF CONTRACT AND DAMAGES.” Southern answered and filed exceptions of prematurity and no right and no cause of action. Southern’s exception of prematurity was based upon Plaintiffs’ non-compliance with the provisions of the Louisiana New Home Warranty Act (La. R.S. 9:3141-3150).
The proceedings in the trial court were amply described by the trial judge in his reasons for judgment as follows:
This matter first came before the Court on January 21, 1999, on hearing of exceptions of prematurity and no right and no cause of action. These exceptions were filed by defendant, Southern Energy Homes. On January 20, 1999 the Court allowed plaintiffs to file a first amended and supplemental petition for breach of contract and damages, this being filed one day before the hearing on January 21, 1999. The pleadings filed January 20, 1999 added Kite Brothers, Inc. as a defendant and | ¡.restated the cause of action pertaining to defendant, Southern Energy Homes.
On January 21, 2000 after oral arguments, the Court maintained the exception of prematurity and ordered plaintiffs’ suit dismissed for failure to follow the requirements of the New Home Warranty Act La. R.S. 9:3141 pertaining to notice and allowing defendant the opportunity to make repairs.
On February 2, 1999 Kite Brothers, Inc. filed exceptions to service of process and an exception of prescription. For all practical purposes plaintiffs concede that plaintiffs’ claim against Kite Brothers, Inc. had prescribed at the time of filing the first amended and supplemental petition on January 20, 2000, and therefore Kite Brothers, Inc.[’s] exception of prescription will be granted. The exception of service of process is therefore moot and of no consequence *638 and the Court will not address that matter.
Simultaneous with the exception filed by Kite Brothers, Inc., Southern Energy Homes filed a second set of exceptions. The Court finds that the exceptions filed by Southern Energy Homes on February 2, 2000 were unnecessary since the Court had previously granted the exception of prematurity and ordered the suit dismissed. Therefore there was at the time the exceptions were filed on February 2, 2000 no suit then viable which could be the subject of exceptions. It does seem however that no written order of dismissal was ever submitted by defense counsel, and therefore there was no written order signed or filed in the record. The minutes of Court of January 21, 2000 clearly however reflect the dismissal of plaintiffs’ suit. This dismissal was subsequent to the filing of plaintiffs’ first amended and supplemental petition, and therefore effectively dismissed that part of the first amended and supplemental petition insofar as it relates to Southern Energy Homes as well as plaintiffs’ original petition.
The Court will sign an order of dismissal when submitted in accordance with reasons stated on January 21, 1999, as to the plaintiffs’ suit against Southern Energy Homes thereby maintaining the exception of prematurity. The Court will sign a judgment maintaining Kite Brothers, Inc.[’s] exception of prescription when submitted in accordance with the reasons stated herein dismissing plaintiffs’ suit as it relates to Kite Brothers, Inc.
Done and signed at DeRidder, Beauregard Parish, Louisiana, on this the 18th day of May, 2000.
^Subsequently, the trial court, signed two separate judgments, one on May 30, 2000, dismissing Plaintiffs’ claims against Southern Energy Homes, Inc. based on prematurity and the second on June 1, 2000, dismissing Plaintiffs’ claims against Kite Brothers, Inc. Plaintiffs do not appeal the dismissal of Kite Brothers, hence we will limit our discussion as to the district court’s dismissal of their action against Southern.
LAW AND DISCUSSION
Plaintiffs’ original petition, filed on December 10,1997, sounds in redhibition and, in the alternative, in quanti minoris. Southern filed a document entitled “EXCEPTIONS” on June 29, 1998. Their exception of prematurity was based upon Plaintiffs’ non-compliance with the provisions of the Louisiana New Home Warranty Act. The hearing on Southern’s exceptions did not take place until January 21, 1999. The day before the hearing, by leave of court, Plaintiffs’ were allowed to file their “FIRST AMENDED AND SUPPLEMENTAL PETITION FOR BREACH OF CONTRACT AND DAMAGES.” The amended petition added Kite Brothers as a defendant and added a claim against Southern under the Louisiana New Home Warranty Act. Paragraph fifteen of Plaintiffs’ petition states that on November 17, 1998, Plaintiffs gave Southern “written notice, via certified mail, advising Southern ... of all defects and demanding that Southern ... comply with the provisions of the Louisiana New Home Warranty Act.” On appeal Plaintiffs argue that their letter of November 17, 1998, and their amended petition make Southern’s exception of prematurity moot. Southern argues that, under well settled law, an exception of prematurity is determined by the facts existing at the time the petition is filed and thus, their exception is well founded.
|4We find Southern’s reliance on the Louisiana New Home Warranty Act misplaced. Recently, in Dalme v. Blockers *639 Manufactured Homes, Inc., 00-00244, pp. 2-7 (La.App. 3 Cir. 1/25/01); 779 So.2d 1014, 1017-20, this court, sitting en banc, found the Louisiana New Home Warranty Act not applicable to mobile homes stating the following:
This court has had several opportunities to consider the applicability and scope of the New Home Warranty Act (NHWA), found at La.R.S. 9:3141 et seq, with respect to mobile homes.
Our court has concluded that the NHWA applies to mobile homes. See Sonnier v. Bayou State Mobile Homes, Inc. 96-1458 (La.App. 3 Cir. 4/2/97); 692 So.2d 698, writ denied, 97-1575 (La.10/3/97); 701 So.2d 201. We are now convinced, nevertheless, that the Legislature did not intend such a result. Where a statute is ambiguous or susceptible of two reasonable interpretations, statutory interpretation is necessary. In re Louisiana Health Serv. and Indem. Co. 98-3034 (La.10/19/99); 749 So.2d 610. The meaning of ambiguous words must be sought by examining the context in which they occur and the text of the law as a whole. See West Monroe Police Local 135 v. Norris, 31,183 (La.App. 2 Cir. 10/28/98); 720 So.2d 434, writ denied, 99-0035 (La.2/12/99); 738 So.2d 582. Judicial statutory interpretation must give consideration and meaning to an entire statutory framework and context. Bourgeois v. Akzo Nobel Salt, Inc., 97-54, (La.App. 3 Cir. 10/01/97); 702 So.2d 762, writ denied, 97-2753 (La.2/6/98); 709 So.2d 732. The language of the NHWA is ambiguous. The language does not expressly include mobile homes. The statute could be read as including mobile homes or excluding mobile homes. The more reasonable reading of the statute is one in which the act would apply only to new homes built on-site, rather than mobile homes constructed by manufacturers, which through the channels of interstate commerce incidentally become located in our state.
First, the language used by our legislature in setting forth the purpose of the act suggests that the legislature intended to limit its scope to new homes built on-site. “When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to purpose of the law.” La.Civ.Code art. 10; See Louisiana Smoked Prods., Inc. v. Savoie’s Sausage and Food Prods., Inc., 696 So.2d 1373 (La.1997). The Louisiana Legislature has expressed its purpose in enacting the NHWA at La.R.S. 9:3141. La.R.S. 9:3141 states:
| ¡¡The legislature finds a need to promote commerce in Louisiana by providing clear, concise, and mandatory warranties for the purchasers and occupants of new homes in Louisiana and by providing for the use of homeowners’ insurance as additional protection for the public against defects in the construction of new homes. This need can be met by providing a warranty for a new home purchaser defining the responsibility of the builder to that purchaser and subsequent purchasers during the warranty periods provided herein. The warranty, which is mandatory in most cases, shall apply whether or not building code regulations are in effect in the location of the structure, thereby promoting uniformity of defined building-standards. Additionally, all provisions of this Chapter shall apply to any defect although there is no building standard directly regulating the defective workmanship or materials.
In this statement of purpose, the legislature anticipates that the statutory warranty outlined in the act will be ap *640 plied to builders and to occupants of new homes. In addition, the statement of purpose provides that the warranty will be applied whether or not building codes are in effect at the location of the structure and will be applied regardless of whether any building standards relate directly to the defective workmanship or materials that the warranty covers. The legislature’s repeated reference to “building codes” and “building standards” in this act’s statement of purpose indicates that the legislature intended this legislation to apply to homes built on-site. Only homes built on-site are typically covered by such “building standards” or “building codes.” Mobile homes are covered, in contrast, by legislation specifically providing for the standards by which they are to be built, not by “building standards” and “building codes.” See La.R.S. 51:911.23. The language used by the legislature in the statement of purpose indicates that the statute should be applied only to homes capable of being regulated by “building standards” or “building codes,” even if these homes are not currently regulated by them. The only new homes susceptible of such regulation are homes that are built on-site, not mobile homes.
In addition, the legislature defined several terms narrowly, so as to exclude the possibility that the NHWA covers mobile homes. First, the definition of “builder” does not- appear broad enough to encompass the manufacturer of a mobile home. “Builder” is defined as, “any person, corporation, partnership, limited liability company, joint venture, or other entity which constructs a home, or addition thereto, including a home initially occupied by a builder as his residence ...” La.R.S. 9:3143(1). Manufacturer, the term used to describe one who constructs mobile homes, is conspicuously absent from the NHWA. See generally La.R.S. 51:911.22(5) (provides definition of manufacturer). RThe dissimilarity between the builder of a home and the manufacturer of a mobile home is apparent when one considers the difference between the processes used by a builder to construct a home and a manufacturer to produce a mobile home.
Second, the term “home,” as defined by the statute, and in the context of the statute as a whole, seems to refer only to those homes built on-site. “Home” is defined as, “any new structure designated and used only for residential use, together with all attached and unattached structures, constructed by the builder whether or not the land was purchased by the builder. Such term includes structures containing multiple family dwellings or residences.” La. R.S. 9:3143(3). (Emphasis added.) In the NHWA, the clear meaning of “include” is an expansion of the word “home” to encompass multiple family dwellings or residences, e.g., apartment complexes. The legislature knew that a “multiple family dwelling” may not have been understood to be a “home” under the NHWA so the legislature included it in its definition of “home” to insure coverage. The legislature did not state that the term “mobile home” was included as a “home” even though a mobile home may not be understood to be a “home” in this context. The fact that the legislature did not specifically state that mobile homes were included under the definition of “home,” although it took care to note that “multiple family dwellings” were included, is strong evidence that the legislature intended the act to exclude mobile homes.
Third, the warranty provisions of the act provide, “[ajfter the first year, the concrete floor of a basement and the concrete floor of an attached or unat *641 tached garage that is built separate from a foundation wall or other structural element of the home.” La.R.S. 9:3144(2). The statute also makes extensive reference to “building standards”. “Building standards” are defined in the act as:
[Standards contained in the building code, mechanical-plumbing code, and electrical code in the parish, city, or other local political subdivision where a home is to be located, at the time construction of that home is commenced, or, if the parish, city, or other local subdivision has not adopted such codes, the Standard Building Code, together with any additional performance standards, if any, which the builder may undertake in to be in compliance.
La.R.S. 9:3143(2). The items listed as covered under the statutory warranty and the legislature’s reliance in the statute on local building standards are indications that the drafters of this legislation considered a home as something which would be permanently situated in one place, rather than something susceptible of movement from place to place. To be certain, it would be difficult, if not impossible, to apply local building |7standards to a mobile home that was built in another state and then installed in a parish of this state.
Furthermore, the legislative history of the NHWA indicates that the Louisiana Legislature intended the scope of the act to be limited to new homes built on-site. A court may look to the legislative history of a statute to discern the intent of the legislature in enacting that statute. See Roberts v. State Farm Mut. Auto. Ins. Co., 27,501 (La.App. 2 Cir. 11/1/95); 662 So.2d 821. In the Louisiana Senate and House, the discussion of the NHWA clearly indicated that the purpose of the act was to provide the exclusive warranties of residential home builders to owners of newly constructed homes.[2] Legislators are presumed to pass laws with deliberation and with full knowledge of all existing laws on the same subject. Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97); 694 So.2d 184. The legislators, who referred to “residential home builders” when presenting the act, likely knew that the term had been previously defined to exclude those who manufactured mobile homes. La.R.S. 37:2150.1 provides:
(9) “Residential building contractor” means any corporation, partnership, or individual who constructs a fixed building or structure for sale for use by another as a residence or who, for a price, commission, fee, wage, or other compensation, undertakes or of *642 fers to undertake the construction, or superintending of the construction of any building or structure which is not more than three floors in height, to be used by another as a residence, when the cost of the undertaking exceeds fifty thousand dollars. The term “residential building contractor” includes all contractors, subcontractors, architects, and engineers who receive an additional fee for the employment or direction of labor, or any other work beyond the normal architectural or engineering services. It shall not include the manufactured housing industry or those persons engaged in building residential structures that are mounted on metal chassis and wheels.
| s(Emphasis added.) Thus, an examination of the legislative history bolsters the conclusion that the legislature intended the NHWA to apply only to those residences built on-site and not those applicable to mobile homes.
Inasmuch as this court has concluded that the provisions of the NHWA are not applicable to mobile homes, the reliance by the district court thereon was misplaced and its judgment in error.
Accordingly, for the reason stated above, the judgment of the district court dismissing Plaintiffs’ suit against Southern is reversed and this case is remanded for further proceedings. All costs of this appeal are assessed against Defendant, Southern Energy Homes, Inc.
REVERSED AND REMANDED.

. “Mr. Sidney Fazio presented this bill and explained it would clarify the present law and do away with the perpetual warranty that presently exists for home builders. It would provide for exclusive warranties of residential home builders to owners of newly constructed homes.” (Emphasis added.) Louisiana Senate Committee on Judiciary, Minutes of Meeting of May 13, 1986, Senate Bill No. 57 by Senator Bares, p. 7.
"Representative Thompson presented Senate Bill 57 which provides for express and exclusive warranties of residential home builders for newly constructed homes.” (Emphasis added.). Louisiana Legislature House of Representatives, Civil Law and Procedure Committee, Minutes of Meeting of June 9, 1996, Senate Bill No. 57 by Senator Bares, p. 2.
“Mr. Johnny Koch, Louisiana Homebuilders Association, ... appeared before the committee in support of Senate Bill No. 413. He stated that the New Home Warranty Act would define the rights, duties, and responsibilities of a new home purchaser and a new home builder.’’ (Emphasis added.). Minutes of the House Commerce Committee Meeting of May 17, 1999, Senate Bill No. 413 by Senator Heitmeier, p. 2.