Dear Mr. Simon:
On behalf of the Lafayette Parish School Board ("Board"), you requested an opinion of this office on several issues concerning La.R.S. 17:497, which provides for the payment of operational expenses to school bus operators. Below, we separately address each of the following four issues you have raised:
1. In determining operational expenses to be paid a school bus operator under La.R.S. 17:497, is the "cents per mile" amount multiplied by total miles per day in transporting students (morning and afternoon routes combined) or by "mileage one-way" as defined in Subsection C of that statute?
2. The Board agreed to freeze route sizes from the 2003-2004 school year for all school bus drivers, as part of a revised transportation plan, said freeze to be temporary until the end of the 2004-2005 school year. Most 2004-2005 routes contain less actual mileage than those of the 2003-2004 school year. If a driver purchases a new or used bus less than five (5) years old during the 2004-2005 school year, i.e., during the period of "temporary freeze" of routes, will the route size guaranteed by La.R.S. 17:497(D)(1) be the actual route size (miles) driven or the route size from last year frozen only for the 2004-2005 school year?
3. Other than those bus operators with guaranteed routes under La.R.S.17:497(D)(1), is it legal for the Board to pay operational expense to a school bus operator based on miles driven during the 2003-2004 school year when that school bus operator's actual route for the 2004-2005 school year is smaller in mileage when compared to last school year?
4. It has been your opinion that operational expenses paid to a school bus owner "are not considered salary" and are merely a reimbursement of operational expenses. See Opinions 81-847 and 93-121. Is this still the opinion of your office?
1. Reimbursement of operational expenses on a per-mile basis
La.R.S. 17:158 and R.S. 17:497 govern the establishment and continuation of school bus routes in Louisiana. La.R.S. 17:158
requires parish and city school boards to provide free transportation to eligible students (subject to certain exceptions and limitations which are not relevant to the issues you have raised). It further authorizes such school boards to employ school bus operators and to enter into contracts or mutual agreements for providing school bus transportation. See La.R.S.17:158(A)(1) and (4). La.R.S. 17:497 provides a schedule or rate of compensation for the payment of operational expenses to school bus operators, on a cents-per-mile basis.
You ask whether, in determining the operational expense payments owed to a school bus operator under La.R.S. 17:497, the "cents-per-mile" figure is multiplied by the total miles per day in transporting children (i.e., morning and afternoon routes combined), or by the "mileage one-way" as defined in the statute. "Mileage one-way" is defined in La.R.S. 17:497(C) as "the distance the bus travels after picking up its first child and until it reaches the final destination or school of said route or routes officially designated by each school board."
The statutes do not address whether the cents-per-mile figure should be multiplied by the mileage one-way or by the total miles covered in transporting students (morning and afternoon combined). Though La.R.S. 17:497(C) purports to define "mileage one-way as used in this Section," that term is not used in Section 497 except for purposes of providing a definition, nor is it used in any related statute. Additionally, the case law, regulations,[1]
and prior opinions issued by this office offer no guidance on which of the two interpretations referenced in your question should control. Therefore, it is not clear (a) what role, if any, mileage one-way plays in calculating the total operational expense payments to a school bus operator, and (b) what mileage the cents-per-mile figure should be multiplied by to arrive at the total operational expense reimbursement owed to a school bus operator.
Due to the uncertainty over the application of Section 497, and the legislature's efforts to define the term "mileage one-way" which is not currently used anywhere in the statutes, we find it necessary to ascertain the legislative intent regarding the role of one-way mileage in calculating total operating expense to be reimbursed, as well as the legislative history underlying the use of that term in the statute.[2]
La.R.S. 17:497 was originally enacted in 1954 by Act 1954 No. 74, § 3, and has since been amended by numerous Acts. In the original 1954 Act, the operational expense payment schedule was based on the "route traveled one way in actual transportation of children." The cents-per-mile column in this original payment schedule was labeled "[p]ayment per mile actually traveled (double route miles)." Thus, under Section 497, as originally enacted in 1954, the total operational compensation was the cents-per-mile figure multiplied by round-trip miles, i.e., morning and afternoon routes combined.
This round trip mileage requirement was retained in substance in the 1955 amendments to Section 497, Acts 1955, No. 57, § 1, No. 58, § 1, though the mechanics by which it was achieved was different. In the 1955 amendments, the payment schedules were categorized according to "mileage one-way;"[3] the cents-per-mile column, instead of being labeled "double route miles" was labeled "mileage one-way;" and added to the bottom of the payment schedule was a provision, "[d]ouble for round trip mileage." This was true of the 1956 amendment also. See Act 1956, No. 112, § 1. Thus, under the 1955- 1956 amendments, the "mileage one-way" heading required a calculation based on one-way mileage, and the separate "double for round trip mileage" required doubling for round trip mileage.
However, in some later amendments, the reference to "double route miles" or "double for round trip mileage" was omitted; also omitted was the term "mileage one-way" from the heading of the cents-per-mile column. See Act 1964, Ex. Sess., No. 27, § 1, Acts 1966, No. 167, § 1; Acts 1967, No. 58, § 1; Acts 1968, No. 397, § 4.
All matter that is omitted in an amended act is considered repealed. Giles v. Cain, 1998-0212 (La.App. 1 Cir. 4/19/99),734 So.2d 109, rehearing denied, writ granted in part, judgmentvacated in part, 1999-2328 (La. 6/2/00), 762 So.2d 1116, rehearingdenied, 1999-2328 (La. 8/31/00), 766 So.2d 1269. Also see La. C.C. art. 8. The omission of double route miles or round trip mileage in the 1964 -1968 amendments possibly meant the doubling requirement was repealed and payment was based on one-way mileage. However, a contrary interpretation is also possible, thanks to the simultaneous omission of "mileage one-way" from the heading of the cents-per-mile column: this latter omission can be construed as a repeal of the restriction that compensation be calculated for mileage one-way, such that no express, separate reference to round trip mileage was thought necessary to achieve compensation based on double route miles.
A 1970 amendment resurrected the requirement that the total compensation be based on round-trip mileage. See Act 1970, No. 586, § 1, which added to the definition of "mileage one-way" a provision that "[t]he operational mileage rate as set forth in the schedule above, shall be doubled for round trip mileage." This amendment, like the 1955-1956 amendments, also added "mileage one-way" to the heading of the cents-per-mile schedule. However, the doubling requirement was once again removed from all subsequent amendments, as was the "mileage one-way" labeling of the cents-per-mile column. See Act 1970, No. 625, § 2; Act 1971, No. 103, § 1; Act 1974, No. 206, § 1; Act 1978, No. 37, § 1; Acts 197, No. 452, § 1, eff. July 13, 1979; Acts 1980, No. 147, § 1, eff. July 2, 1980; Act 1980, No. 382, § 1; Act 1983, No. 658, § 1; Act 1985, No. 619, § 1; Act 1986, No. 140, § 1, eff. beginning with fall term 1986; Act 1986, No. 360, § 1; Act 1986, No. 1025, § 1; Act 1992, No. 1086, § 1.
In interpreting the current provisions of Section 497, the legislative history, including the omissions discussed above, must be taken into account. All matter that is omitted in an amended act is considered repealed. Giles v. Cain, supra; La. C.C. art. 8. The omission of the earlier reference to round-trip mileage or double route miles from current provisions of Section 497 possibly repealed the doubling requirement such that total compensation of operational expense is currently based on one-way mileage.[4]
However, as explained above, a contrary interpretation in favor of double route miles is also possible because of the simultaneous omission of "mileage one-way" from the heading of the cents — per-mile column. Arguably, the presence of "mileage one-way" in the heading of the cents-per-mile column restricted compensation to one-way mileage, which made it necessary to include a separate, express double route mileage provision. The removal of "mileage one-way" from the heading of the cents-per-mile column arguably repealed the one-way mileage restriction, such that compensation was based on round trip mileage even without any express round trip mileage provision. Thus, even the history of the statute does not clarify the legislative intent. In fact, it seems to lead to two contrary interpretations.
Because the current version of La.R.S. 17:497 is silent on the role of one-way mileage in arriving at total operational compensation, and the rules of statutory construction seem to produce differing results, this office expresses no opinion as to whether the cents-per-mile figure should be multiplied by mileage one-way or round-trip miles. Rather, we believe it would be best if the Board sought legislative clarification on that issue.
Alternatively, the doctrine of contemporaneous construction may be applied to clarify the meaning of the statute. Under this doctrine, when an administrative body has, over a long period of time, placed an interpretation upon a legislative enactment, that interpretation is given substantial and often decisive weight in the legislation's interpretation. See State v. BP Exploration Oil, Inc., 96-0716 (La. 1/14/97), 686 So.2d 823, 828; Board ofTrustees of State Employees Group Benefits Program v. St. LandryParish Bd. 2002-0393 (La.App. 1 Cir. 2/14/03), 844 So.2d 90, 100;Ouachita Parish School Board v. Ouachita Parish SupervisorsAssociation, 362 So2d 1138 (La. 1978); Washington v. St. CharlesParish School Board, 288 So.2d 321 (La. 1974).[5] If the Board has interpreted the "mileage one-way" provision consistently for over a long period of time, the Board's interpretation would be given substantial and often decisive weight in the interpretation of that provision.
2. Guaranteed mileage under La.R.S. 17:497
 Your next issue concerns the application of the "guaranteedmileage" or "frozen mileage" provisions of Section 497(D). Youindicate that the Board agreed to freeze route sizes from the2003-2004 school year for all school bus drivers, as part of arevised transportation plan, said freeze to be temporary until theend of the 2004-2005 school year. You further indicate that most2004-2005 routes contain less actual mileage than those of the2003-2004 school year. You then ask whether the route sizeguaranteed by La.R.S. 17:497(D)(1) should be the actual routesize (miles) driven or the route size from last year frozen onlyfor the 2004-2005 school year, if a driver purchases a new or usedbus less than five (5) years old this school year, during thisperiod of "temporary freeze" of routes.
 La.R.S. 17:497(D) provides as follows:
 Each school board shall designate the size of the bus to be used on each official regular school bus route. When an operator deems it necessary to purchase a bus, either new or used for not more than five years from the date of manufacture, of the designated size to be used on an official regular school bus route, he shall obtain the approval for the purchase by the school board or its duly designated officer or agent. After purchasing a new or used bus not more than five years old, so approved, no operator shall be penalized as a result of the change by the school board in the designated size of the bus or the length of the route within a five-year period following such purchase of a bus. However, the period shall be seven years for those operators who purchase a new bus after July 1, 1985.
 No city or parish school board shall approve the purchase by anoperator of a used bus when the sole purpose of such purchase isto extend the protected period against penalty provided for inthis Subsection. 
 Under Section 497(D)(1), a school board must designate bus sizes for each official regular school bus route, which mandatory designation governs the propriety of a school bus operator's use of a specific bus size on a specific route. A school board would appear to have substantial discretion in designating school bus sizes and setting regular official routes.[6] However, once such school bus size and school bus route designations are made and until changed by the Board,[7] the designated school bus sizes and routes have to be considered official and binding for that period, if they are to govern school bus operations. If the Board designated for the 2004-2005 school year the routes in effect during the 2003-2004 school year without limiting the applicability of the routes at the time of designation, and has not since changed that designation, then such routes are the "official regular school bus routes" for the 2004-2005 school year for purposes of Section 497(D)(1).[8] The characterization of the designated routes as a "temporary freeze" (i.e., effective only during the 2004-2005 school year) does not, in itself, serve to restrict their application to school bus operators who purchased a bus[9] during the 2004-2005 school year. Without an express limitation of such routes to existing buses in operation, and the designation of alternative route sizes for buses purchased during the 2004-2005 school year, we conclude that the temporary freeze is in effect for all classes of school bus operators, including those that purchased, upon Board approval, a bus during that period. Such operators who purchased a bus during the 2004-2005 period with Board approval would be entitled to the seven-year protection under Section 497(D)(1).
The requirement that a school bus operator obtain prior board approval for any purchase of a school bus gives the school board an opportunity to fully consider the appropriateness of a bus purchase, with the knowledge that approval, once given, would entitle the school bus operator to the bus size and route for seven (7) years following the purchase. A school board would have the authority to consider all relevant factors in reaching a decision regarding approval, including, as mandated by Section 497(D)(2), whether the sole purpose of the purchase is to extend the statutory protections for a longer period. However, once a school board has approved the purchase of a bus that conforms to the Board's then designated official bus and route sizes, the "guaranteed mileage" protections of Section 497(D)(1) would apply. The Board must then refrain from applying (for seven years) any later changes to the designated bus size or route length to operators who have already purchased a bus, with prior Board approval, for use on an official regular school bus route. If the Board has already approved the purchase of buses during the 2004-2005 school year without any designation of alternative route sizes for buses to be bought during the 2004-2005 school year, we conclude that the school bus operators whose purchases were so approved would be entitled to the 2003-2004 route sizes for seven years under Section 497(D)(1).[10]
3. Basis of operational expense payments
Your third issue is: other than those school bus operators with guaranteed routes under La.R.S. 17:497(D)(1), is it legal for the Board to pay operational expense to a school bus operator based on miles driven during the 2003-2004 school year when that school bus operator's actual route for the 2004-2005 school year is smaller in mileage when compared to last school year?
As explained in our response to your second question above, a school bus operator's route lengths are those officially designated by the Board pursuant to the mandate in Section 497(D)(1) to designate bus sizes to be used on all official regular bus routes. That a school board designates the official bus routes and their length is further supported by Subsection C which provides that "[t]he term `mileage one-way' as used in this Section shall mean the distance the bus travels after picking up its first child and until it reaches the final destination or school of said route or routes officially designated by eachschool board."[11] [Emphasis added.] Thus, other than school bus operators who have "frozen mileage" under Subsection (D)(1), operational expense payments to school bus operators should be based on a school bus operator's route as officially designated by the Board.[12]
4. Characterization of operational expense compensation
 Finally, in reference to earlier opinions by this office (Opinions81-0847 and 93-0121), you ask whether the opinion of this officecontinues to be that operational expenses paid to a school busowner "are not considered salary" and are merely a reimbursementof operational expenses.
 La.R.S. 17:496 establishes minimum salaries for school busdrivers. La.R.S. 17:496(F) provides that such minimum salariesare to be paid separately from any reimbursement of operationalexpenses under R.S. 17:497. Thus, the operational expenses arecharacterized in the statute as a "reimbursement" to school busoperators, for the operation of buses, separate from salaries paidto school bus drivers. A school bus operator is "any individual,parish, or city school board who owns and is responsible for theoperation, maintenance, and replacement of a school bus operatedin the public schools of the state ." See La.R.S. 17:476(B).
 Opinion No. 81-0847 analyzed (in the context of retirementbenefits) the above distinction between salaries paid to schoolbus drivers and operational expenses paid to school bus operatorsas follows:
 " the operational expenses which are paid for the operation, maintenance and replacement of a school bus are not considered salary. They are reimbursement for the expenses involved in providing and operating a school bus. They are paid to the owner of the bus, who may be an individual or a school board. The owner of the bus may not be the person who has contracted to drive the school bus. If the owner and driver are the same, the payment for operational expenses is not reported as income for retirement system purposes.
 "Therefore, it is the opinion of this office that a disability retiree could own a school bus and receive reimbursement for operational expenses without any effect on his disability retirement. The operational expenses should not be reported as earnings and cannot be used as an offset to his disability retirement benefits."
 Opinion No. 91-0121 reiterated this conclusion that the operational expense compensation is not considered salary, but a reimbursement to the owner for the operation, maintenance and replacement of the school bus.
 We find no basis to reach a different conclusion at this time.However, it should be noted that this opinion is limited to yourquestion concerning compensation under La.R.S. 17:497. Anyquestions regarding the implications of this statutory requirementunder the Internal Revenue Code should be directed to the InternalRevenue Service.
 We hope this sufficiently answers your inquiry, but if we can beof further assistance, do not hesitate to contact us.
 With best regards,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
BY: _____________________________
 Uma M. Subramanian Assistant Attorney General
CCF, Jr.:UMS:lrs
[1] The State Board of Elementary and Secondary Education's ("BESE") regulations, promulgated pursuant to BESE's authority under La.R.S. 17:164 are found in Bulletin 1191, titled "School Transportation Handbook" ("Handbook"). Chapter 21 of the Handbook, "School Bus Routes," contains policies governing a school board's establishment of new routes and the continuation of existing routes in order to achieve maximum utilization of buses and consolidation or elimination of unnecessary or duplicated mileage. Section 2103 provides that "[b]us routes are measured in terms of `one-way mileage.' Paid one-way mileage for contract drivers begins when the first child is picked up and ends when the final destination or school is reached." It then prescribes the use of an average one-way mileage where the morning and afternoon routes differ. This regulation, the only substantive one concerning mileage one-way, still does not resolve the ambiguity over whether the cents-per- mile figure in Section 497 should be multiplied by one-way mileage or by total mileage (morning and afternoon routes combined).
[2] When the language of the law is susceptible of differentmeanings, it must be interpreted as having the meaning that bestconforms to the purpose of the law. La. C. C. art. 10.Generally, when interpreting a statute, courts begin with thepremise that legislation is the solemn expression of legislativewill and that, therefore, the interpretation of a law involves asearch for the legislature's intent. State ex rel. D.W., 2003-2754(La. 1/30/04), 865 So.2d 45. To aid in interpreting an ambiguousstatute, one may look to legislative history to discern the intentof the legislature. See Caldwell v. Owens, 34,894 (La.App. 2 Cir.3/8/01) 781 So.2d 895; Roberts v. State Farm Mut. Auto. Ins. Co.,27,501 (La.App. 2 Cir. 11/1/95) 662 So.2d 821.
[3] "Mileage one-way" was a defined term in the 1955 Act. Thedefinition was identical to the present one, i.e., "the distancethe bus travels after picking up its first child and until itreaches the final destination or school of said route, or routesofficially designated by each school board." That definition hasbeen retained in the statute since 1955.
[4] The re-appearance, in 1970, of the round-trip mileagerequirement in the added provision "[t]he operational mileage rateas set forth in the schedule above, shall be doubled for roundtrip mileage" shows that the legislature was cognizant of theomission in the 1964-1968 amendments. We therefore must assumethat the legislature is now similarly aware of the omission ofthat requirement from the current version of Section 497, and haschosen not to revive it.
[5] We have been advised by the Department of Education staffthat, due to the lack of clarity and guidelines in the statute,the local school boards may be implementing the operationalcompensation provisions differently. We understand that someschool boards compensate bus operators for mileage one-way, whileothers use round trip mileage.
[6] As noted above, La.R.S. 17:158(A)(4) authorizes schoolboards to employ school bus operators and to enter into contractsor mutual agreements for providing pupil transportation. Thisprovision has been interpreted as granting school boards "a vastamount of discretion in fashioning transportation policies," suchas the discretion to either employ bus drivers or contract withthem as independent contractors. See Morgan v. Livingston ParishSchool Bd., 577 So.2d 176, 179 (La.App. 1 Cir. 1991). It wouldtherefore appear that the Board has some discretion (subject toapplicable statutory and regulatory limitations) in settingtransportation policies and implementing them, including thedesignation of school bus sizes and official school bus routes.
[7] As this office has previously opined, a school board hasthe authority to change the bus size and route designations, solong as the new designations are not applied to school busoperators who have purchased a bus, upon approval by the Board,for a period of seven (7) years following the purchase. SeeOpinion 89-426.
[8] You have indicated that the extension of last year'sroutes to the 2004-2005 school year was intended to be"temporary." However, other than the one-year restriction on thefreeze, the Board does not appear to have placed any limitationson the applicability of this temporary freeze, nor establishedalternative routes or route sizes applicable to any buses to bebought during the 2004-2005 school year.
[9] As the age of the bus that a bus operator may purchase orthe Board may approve is not at issue, we will simply refer to thepurchase of "a bus" or "buses" which shall be understood as thepurchase of a new bus or a used bus not more than five years oldas specified in the statute, and of the designated size.
[10] As an alternative measure of the route sizes protectedunder Section 497(D)(1), you have suggested that the protectedroute sizes for school bus operators who made Board-approvedpurchases during the 2004-2005 year be based on actual 2004-2005miles driven. However, this alternative would lack the advancedesignation of routes and bus sizes at the time of approval asrequired under Section 497(D)(1). Under your proposal, school busoperators would be purchasing buses (and the Board would begranting/denying approval of purchases) for route sizes that couldnot be determined until the end of the school year. This seemscontrary to the statutory scheme of putting school bus operatorson notice of designated bus sizes for official regular school busroutes, and the school board's informed approval of the purchaseof buses of a size as designated by the Board for a known,official regular bus route.
[11] As explained in our response to your first question,mileage one-way plays a role in the computation of operationalpayments either it is used once or it is doubled for round tripmileage. Regardless of which of these two interpretationscontrol, the fact remains that the length of the bus routes usedin computing the operational compensation are those "officiallydesignated by each school board" as provided in the definition ofmileage one-way in Subsection C.
[12] We note that a school board's authority to designate bus routes is subject to applicable law and regulations, including those found in Chapter 21 of BESE's Bulletin 1191, which recognizes a school board's responsibility to maintain safe, efficient, economical school transportation programs, and governs a school board's establishment of new routes and the continuation of existing routes "to achieve maximum utilization of buses and consolidation or elimination of unnecessary or duplicated mileage."