795 So.2d 1153 (2001)
ELEVATING BOATS, INC.,
v.
ST. BERNARD PARISH, et al.
No. 2000-C-3518.
Supreme Court of Louisiana.
September 5, 2001.
*1156 Mary A. Hand, Salvador E. Gutierrez, Jr., Gutierrez & Hand, Chalmette, Counsel for Applicant.
Albert J. Derbes, III, Albert J. Derbes, IV, Eric J. Derbes, Metairie, Counsel for Respondent.
CALOGERO, Chief Justice.[*]
The two petitions for refund of taxes paid under protest at issue in this case arise out of a Rule for Taxes and an assessment by Sheriff Jack A. Stephens, on behalf of St. Bernard Parish, on December 30, 1994 and June 13, 1995 against Elevating Boats, Inc. for unpaid sales and use taxes from January 1, 1984 to August 31, 1994, unpaid occupational license taxes for the same period of time, interest, and penalties. The trial court, finding that Elevating Boats had intentionally defrauded the people of St. Bernard Parish of tax revenue for that time period, ruled in favor of the Parish and found that Elevating Boats owed the Parish a total of $1,459,586.50 in taxes, interest, and attorney fees. The court further denied Elevating Boats's request for a credit for taxes paid to Plaquemines Parish for certain years of this time period. A divided court of appeal reversed the district court in part, affirmed in part, and remanded for further proceedings, reasoning that a portion of the sales and use taxes was prescribed, a lower amount of occupational license tax was owed, and that an inter-parish credit was due Elevating Boats. We granted the writ application of the Sheriff of St. Bernard Parish to examine the court of appeal's reversal of the district court judgment, to address the significant issues of law and fact raised in this case, and to provide guidance to the lower courts in the interpretation and application of La.Rev. Stat. § 33:2718.4.

Facts and Procedural History
On July 29, 1994, JoAnn Lane, Director of the Occupational License Division of the St. Bernard Parish Sheriffs Office, wrote a letter to Elevating Boats, Inc. advising that the company did not hold an occupational license although it was required by law to do so. The letter further advised Elevating Boats that it should apply for the license and pay the appropriate occupational license tax. On August 31, 1994, Nettie Dean, office manager of Elevating Boats, replied with an application for a license identifying the company as a retailer and indicating that $836,000 in gross *1157 sales by the company had taken place in the year 1993. At that time, Director Lane forwarded this information to the Sheriffs Sales and Use Tax Department which compared the $836,000 figure to the sales and use tax returns filed by Elevating Boats in St. Bernard Parish for 1993. The returns on file represented that no sales were made during that year; thus, Elevating Boats had paid no St. Bernard sales taxes at all in 1993. St. Bernard Parish Sheriff Jack A. Stephens, Ex-Officio Tax Collector for the Parish, initiated an audit of Elevating Boats's financial records for the tax years 1991 to 1994 and, as part of the audit, commissioned a survey to determine whether or not Elevating Boats was located within St. Bernard Parish. The survey revealed that all of the operational buildings of the company were within the Parish's boundaries.[1]
On December 30, 1994, Sheriff Stephens filed a Rule for Taxes against Elevating Boats. In that Rule, Sheriff Stephens alleged that the company had failed and refused to pay the proper sales and use taxes due the Parish from January 1, 1991 to August 31, 1994.[2] Specifically, he alleged that $610,494.00 in past due sales and use tax was owed, including interest, penalties, and attorney fees. Further, he alleged that Elevating Boats had not properly paid occupational license taxes in the amount of $37,977.00 including interest, penalties, and attorney fees for that same period of time.
On March 1, 1995, Elevating Boats paid under protest $648,471.00 in past due taxes, penalties, interest, and attorney fees representing the full amount sought in the Rule. The next day the company filed a "Petition for Refund of Taxes, Interest, and Penalty Paid Under Protest" seeking return of the monies paid the day before. Discovery in that lawsuit commenced with the deposition of officers of Elevating Boats. At those depositions, officers of the company admitted to having been aware of the location of the St. Bernard-Plaquemines Parish boundary line in relation to the Elevating Boats plant as far back as the 1960s. Consequently, Sheriff Stephens sought an audit of the financial records of Elevating Boats for an additional seven prior years. Elevating Boats refused to permit that audit.
On June 13, 1995, Sheriff Stephens formally assessed against Elevating Boats taxes due for the years 1984 to 1990. Specifically, the Sheriff estimated that Elevating Boats owed the Parish $1,189,395.00 in sales and use taxes for the seven years, including interest, penalties, and attorney fees.[3] Further, the Sheriff estimated that Elevating Boats owed $118,939.00 in past due occupational license taxes, including interest, penalties, and attorney fees. On June 20, 1995, Elevating Boats paid under protest $1,308,334.00 in past due taxes, penalties, interest, and attorney fees representing the full amount of the assessment. Three days later, the company filed a separate "Petition for Refund of Taxes Paid Under Protest" seeking return of the $1,308,334.00.[4] The two separate suits were consolidated on October 13, 1997.
*1158 Elevating Boats, Inc. was first organized by Lynn B. Dean in 1955 and was the product of a merger of several smaller business enterprises. The company designs elevating boats, builds hydraulic cranes, rents elevating boats, maintains and repairs elevating boats, and machines parts for boats. Elevating Boats originally operated in a building solely within Plaquemines Parish along the western shore of the Caernarvon Canal, which runs north to south solely within Plaquemines Parish, near the Mississippi River. The Caernarvon Canal runs parallel to the St. Bernard-Plaquemines parish line approximately one hundred feet to the east of the line.
In 1967, as business began to expand, Elevating Boats built a new facility adjacent to, and west of, the prior plant, but solely within St. Bernard Parish. Other facilities have since been constructed within St. Bernard and the original building, located in Plaquemines, has been removed altogether. Along with this expansion, Elevating Boats constructed a small canal on its property that links the Caernarvon Canal in Plaquemines Parish with the operational buildings in St. Bernard Parish. Thus, the plot of land that the company currently owns lies on the parish boundary partially in Plaquemines Parish and partially in St. Bernard Parish. Almost all operational activities of the business (managerial, sales, manufacturing, etc.) occur at the plant within St. Bernard Parish while the company's elevating boats are docked in the canal in Plaquemines Parish.
Elevating Boats was incorporated by Lynn Dean on February 7, 1964, and it lists the registered office of the corporation as within St. Bernard Parish. Specifically, the corporate address is listed as: "Route 1, Box 217, Caernarvon, Braithwaite, LA 70040, in the Parish of St. Bernard."[5] At trial, Lynn Dean testified that as early as 1961, he knew where the parish line was located. In fact, the building permit for the new construction in 1967 to expand Elevating Boats's operations was obtained from St. Bernard Parish. Further, Lynn Dean testified in a former lawsuit that the facility was located in St. Bernard, and he has filed and verified two separate lawsuits on behalf of Elevating Boats that allege it to be a corporation with a principal place of business in St. Bernard Parish or as a corporation doing business within the Parish.
Lynn Dean further testified that in 1987, while serving as Chairman of the Budget Committee and elected member of the St. Bernard Parish School Board, he was unaware of the existence of a use tax in St. Bernard or even what a use tax consisted of.[6] However, he admits that while he was an elected member of the School Board, not only did he know of St. Bernard Parish's sales taxes, but he knew that it was *1159 the primary source of funding for the Board. Further, on cross examination, he admitted knowing that Elevating Boats was paying taxes to the wrong jurisdiction:
Q: Did you know you were not paying sales taxes?
A: I knew I was paying sales taxes, but I was just paying it to the wrong firm.
Q: The wrong what?
A: The wrong parish. I knew that. We were paying tax there all that time.
Testimony of Lynn Dean, June 15, 1998, Vol. IV of VII, p. 68. Nevertheless, Dean attributes any errors in tax payments to Marvin Acosta, a subordinate and the manager of Elevating Boats from 1984 to 1990.
Marvin Acosta began working at Elevating Boats in 1965. Over time, his authority increased, and he was supervisor of the preparation of tax returns for the company at one time. He testified that he was aware of the location of the parish line and the firm's location within St. Bernard Parish during his time at Elevating Boats, but that the company consistently paid all sales and use taxes to Plaquemines Parish.[7] Further, he was aware that occupational license taxes were due to St. Bernard Parish and that they were not being paid. When he questioned Lynn Dean about paying taxes to the wrong parish, Acosta stated that Lynn Dean instructed him to pay only the Plaquemines sales taxes because they were lower than those in St. Bernard. Lynn Dean denied making such a statement. In 1990, Doug Dean, Lynn Dean's son, assumed management of the business. At that time, he cut Marvin Acosta's pay significantly and, in 1995, terminated him "due to operating philosophy of Doug Dean."
At trial, Doug Dean testified that he has worked at Elevating Boats for over thirty years. He has been manager of the company since 1990 and currently supervises all employees. Doug Dean revealed at trial that he knew the location of the St. Bernard-Plaquemines parish line as far back as the late 1970s. He further testified that, during all the tax years at issue in this suit, almost all manufacturing, service, and repairs at Elevating Boats occurred within St. Bernard Parish and that there are no longer buildings in Plaquemines Parish that are even capable of such work.
Barbara Duhe testified that she worked at Elevating Boats from 1980 to 1988 under the supervision of Nettie Dean, Lynn Dean's daughter. Her signature appears on the sales and use tax returns between January 1984 and January 1988. During this time, she testified that she became curious as to why Elevating Boats would pay property taxes to St. Bernard Parish, but sales and use taxes to Plaquemines. She took her concerns to Nettie Dean who responded, according to Duhe, that such reasons were none of her business and that it was just the way it had always been done. Finally, Duhe admitted that when she filed the sales and use tax returns with St. Bernard, she knew they were fraudulent, but she did so at the direction of Nettie Dean.
Nettie Dean testified that she has worked at Elevating Boats since 1971 and her education consists of four years of *1160 college and a year and a half of law school. During her tenure at Elevating Boats, her main duties have included the preparation and handling of the accounting work of the company. She specifically denied making the statements attributed to her by Barbara Duhe. Further, although she admitted that she knew her father claimed the plant address as his domicile for election to St. Bernard Parish public offices, she inconsistently but steadfastly denied having any knowledge that the plant was located in St. Bernard until the Rule for Taxes was made by Sheriff Stephens in late 1994.
Finally, the parties stipulated at trial to several pertinent facts as well as most of the accounting figures relevant in this case. The parties agreed that $685,946.76 in sales and use taxes were owed for the years 1984 to 1994 if the taxes had not prescribed and if an inter-parish credit was not due. The parties further agreed that, if the sales and use taxes had not prescribed and if an inter-parish credit was owed, a total of $360,592.15 was owed in past due taxes for the years 1984 to 1994. Finally, and most significantly, they stipulated that 87.28% of all sales at Elevating Boats were properly taxable to St. Bernard Parish.[8] The case proceeded to a judge trial involving six days of witness testimony and roughly 150 exhibits. Following post-trial briefing by both parties, the court rendered its decision on October 28, 1998.
The district court determined that Elevating Boats owed a total of $1,459,586.50 in past due taxes, interest, and attorney fees to St. Bernard Parish. Of that figure, $130,548.00 represented delinquent occupational license taxes, including 15% interest and 10% attorney fees. The balance of $1,329,039.50 represented delinquent sales and use taxes, including 15% interest and 10% attorney fees. The court further denied Elevating Boats's request for an inter-parish credit and assessed costs of the proceeding against it.[9] In extensive reasons for judgment, the trial court made several factual conclusions particularly pertinent to our discussion here.
The trial court specifically found that: "In order to gain an economic advantage, Elevating Boats, Inc. ("EBI"), through its president, Lynn B. Dean, intentionally, willfully, and fraudulently deprived the citizens of St. Bernard parish of critical tax revenue." In doing so, the court found Lynn Dean's statements denying knowledge of taxes due to St. Bernard Parish to be "totally ludicrous" and stated that "Lynn Dean was impeached on so many occasions at trial that the Court does not feel he is credible." In addition to finding that Lynn Dean was not credible, the court specifically found the testimony of Marvin Acosta was "honest," "trustworthy," and "credible." Further, the court found that Barbara Duhe had no reason to lie and that her testimony was believable. Consequently, *1161 the court ruled that Elevating Boats had intentionally defrauded St. Bernard Parish out of sales and use taxes as well as occupational license taxes from 1984 to 1994. Thus, the court entered judgment as indicated above. Both parties appealed to the court of appeal.
In an unpublished opinion, a divided court of appeal (three judges to two) reversed the district court judgment in part, affirmed the judgment in part, and remanded the case for further proceedings. See Elevating Boats, Inc. v. Parish of St. Bernard, 99-0114, 99-0115, 775 So.2d 719 (La.App. 4 Cir.11/29/00). Specifically, the court found that (1) the sales and use taxes for years 1984-1990 were prescribed; (2) Elevating Boats did not fraudulently withhold payment of taxes on certain unreported fixed assets, thus, no use tax was due; (3) Elevating Boats was not a retailer, but a wholesaler, thus, occupational license taxes were lower than that assessed by the trial court; and (4) Elevating Boats was entitled to an inter-parish credit for the taxes paid in Plaquemines Parish during some of the years of the same time period.
We granted the writ application of Sheriff Stephens on behalf of St. Bernard Parish. See Elevating Boats, Inc. v. Parish of St. Bernard, 00-3518 (La.3/9/01), 786 So.2d 108. That application raises the following four issues:
(1) Prescription of Sales and Use Taxes Owed by Elevating Boats to the Parish of St. Bernard for Tax Years 1984 to 1990;
(2) Use Taxes on Certain Fixed Assets of Elevating Boats Unreported to Either St. Bernard or Plaquemines Parishes from 1984 to 1990;
(3) Occupational License Taxes Owed by Elevating Boats for the Tax Years 1988 to 1994; and
(4) The Inter-Parish Credit Owed, if any, to Elevating Boats for Sales and Use Tax Payments Made to Plaquemines Parish.
We will address each issue in turn.

I. Prescription of Sales and Use Taxes
The Rule and assessment by St. Bernard Parish against Elevating Boats addresses sales and use taxes owed for the inclusive period, January 1, 1984 through August 31, 1994. The first issue before us is whether the taxes from any of those years are prescribed.[10] Our Constitution provides:
§ 16 Taxes; Prescription
Taxes, except real property taxes, and licenses shall prescribe in three years after the thirty-first day of December in the year in which they are due, but prescription may be interrupted or suspended as provided by law.
La. Const. art. VII, § 16.
Further, the Louisiana Revised Statutes include the following statutory provision:
§ 33:2718.4 Prescriptive period for taxes, interest, and penalties; interruption and suspension of prescription period.
A. Sales and use taxes levied by any political subdivision shall prescribe as of three years from the thirty-first day of December of the year in which such taxes became due.
B. The prescriptive period running against any such sales and use tax shall be interrupted by any of the following:
(1) The action of the political subdivision in assessing the amounts of such taxes in the manner prescribed by law.

*1162 (2) Filing of a summary proceeding in court.
(3) Filing of any pleadings by the political subdivision or by the taxpayer with any state or federal court.
(4) Filing of a false or fraudulent tax return.
(5) Failure to file a tax return, with intent to defraud.
C. The running of such prescriptive period may also be suspended by means of a written agreement between any taxpayer and the political subdivision made prior to the lapse of such period.
D. As used in this Section, "political subdivision" means any political subdivision of the state which lawfully levies and collects a sales and use tax, and "tax" means a sales and use tax and applicable interest, penalties, and other charges levied by a political subdivision.
La.Rev.Stat. § 33:2718.4. These provisions create a varying prescriptive period for sales and use taxes depending on the date the sales and use taxes are due.
Under the St. Bernard Parish sales and use tax ordinance, sales and use taxes are due and payable to the Parish on a monthly basis. See St. Bernard Sales and Use Tax Ordinance § 6.01. Specifically, on the twentieth day of each month, every business within the Parish must file a return indicating the tax owed from the prior month and include payment of the tax. See id. at § 6.02. The failure to remit payment at that time, absent a thirty day extension from the Parish, shall cause the tax to become delinquent. See id. §§ 6.03, 6.05. Thus, for example, according to La. Rev.Stat. § 33:2718.4(A) and the ordinances, sales and use taxes collected in January 1987 were due on February 20, 1987 and would prescribe on December 31, 1990; sales and use taxes collected in February 1987 were due on March 20, 1987 and would also prescribe on December 31, 1990.
On December 30, 1994, the Sheriff filed a Rule for Taxes against Elevating Boats seeking sales and use taxes owed from January 1, 1991 to August 30, 1994. On June 13, 1995, the Sheriff assessed Elevating Boats sales and use taxes owed from January 1, 1984 to December 31, 1990. We will address the Rule and the assessment separately.

A. Rule for Taxes
On December 30, 1994, Sheriff Stephens filed a Rule for Taxes against Elevating Boats for unpaid sales and use taxes from January 1, 1991 to August 31, 1994. The earliest of these taxes, for the month of January 1991, was due on February 20, 1991 and was set to prescribe on December 31, 1994. Because the Rule for Taxes was filed before December 31, 1994, Elevating Boats concedes that the taxes for sales and use for the month of January 1991 and all successive months in the Rule have not prescribed. Based on the clear statutory and constitutional language, as well as the fact that the parties do not dispute this issue, the Parish's claims against Elevating Boats for taxes owed for sales and use from January 1, 1991 through August 31, 1994 have not prescribed.

B. Assessment of Taxes
On June 13, 1995, Sheriff Stephens mailed a formal demand to Elevating Boats assessing it for unpaid sales and use taxes from January 1, 1984 to December 31, 1990. The latest month of taxes sought to be collected by that demand was for transactions in December of 1990; those taxes were due on January 20, 1991 and were set to prescribe on December 31, 1994. Thus, unless the prescriptive periods for the taxes due during this time *1163 (from January 1, 1984 to December 31, 1990) were either interrupted or suspended, the taxes had prescribed by the time the demand was made by the Sheriff on June 13, 1995 and the Parish has lost its right to assert its claim. Before reaching the merits of this issue, we must first determine whether La.Rev.Stat. § 33:2718.4 and its provisions for the interruption of the prescriptive period on sales and use taxes, a duly enacted statute effective on August 1, 1985, applies to taxes due St. Bernard Parish before August 1, 1985 (i.e. back to January 1, 1984the outset of the period for which this assessment was made).[11]
Although Title I, Section 2 of the Revised Statutes states: "No Section of the Revised Statutes is retroactive unless it is expressly so stated," applying a legislative act to conduct antedating the statute's enactment or upsetting a party's expectations based upon prior law does not mean that a statute is impermissibly "operating retroactively." See Walls v. American Optical Corp., 98-0455, p. 5 (La.9/8/99), 740 So.2d 1262, 1266 (quoting Landgraf v. USI Film Products, 511 U.S. 244, 269, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994)). As Planiol explains:
[A] law is retroactive when it goes back to the past either to evaluate the conditions of the legality of an act, or to modify or suppress the effects of a right already acquired. Outside of those conditions, there is no retroactivity.
1 Marcel Planiol, Treatise on the Civil Law, § 243 (La. State Law Inst. trans. 1959) (12th ed.1939). Furthermore, "[a] law may modify the future effects of acts or even of acts prior to it, without being retroactive." Id. Finally, regarding prescription statutes, Planiol states:
When a law modifies the duration of a prescription, either to lengthen it or to shorten it, prescriptions already accrued are not disturbed by it, but those which are running are affected by the change.
Id. at § 248. This view is consistent with the decisions of the courts of this state. See Doyle v. St. Patrick Hosp., 499 So.2d 704, 708 (La.App. 3rd Cir.1986); Achord v. City of Baton Rouge, 489 So.2d 1373, 1376 (La.App. 1st Cir.1986); Barfield v. Barfield, 483 So.2d 1085, 1089 (La.App. 2nd Cir.1986).[12]
The rationale for such decisions is that the application of a new, extended prescriptive period does not negatively affect any rights that have accrued in favor of any party, for two reasons. First, the injured party (the governing authority in this case) is the only party with any rights in the pursuit of the cause of action. The wrongdoer (the withholding corporation in this case) has only an obligation to perform *1164 or compensate. See Brown v. New Amsterdam Cas. Co., 243 La. 271, 277, 142 So.2d 796, 798 (1962). Second, this rule permitting the extension of prescriptive periods applies only to those prescriptive periods still running on the date of the statute's enactment. This is so because after the prescriptive period on an obligation has run, an obligor gains the right to plead prescription. In such a situation, that right to plead prescription has already accrued and application of a lengthened prescriptive period to revive the obligation, and effectively remove the right to plead prescription, would "modify or suppress the effects of a right already acquired." 1 Planiol, supra at § 243. Thus, we have noted that the Legislature is without the authority to revive a prescribed claim. See Bouterie v. Crane, 616 So.2d 657, 664 n. 15 (La.1993); Hall v. Hall, 516 So.2d 119, 120 (La.1987) (per curiam). Consequently, we find that § 33:2718.4 and its provisions regarding the interruption of the prescriptive period on sales and use taxes are applicable to all sales and use tax obligations not prescribed on the effective date of the Act: August 1, 1985. In this case, the earliest tax obligation sought by the Parish, January of 1984, was not prescribed when the statute was enacted; thus, it (as well as the other tax obligations sought in the Rule which preceded the Act's effective date) are subject to the provisions of § 33:2718.4.
The Parish contends that the prescriptive periods for these sales and use taxes have been interrupted by § 33:2718.4(B)(4), which interrupts prescription on sales and use taxes on the "[f]iling of a false or fraudulent tax return." Initially, we will address the trial court's conclusion that Elevating Boats consistently filed fraudulent sales and use tax returns from 1984-1994.
The Civil Code defines fraud as follows:
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.
La. Civ.Code art.1953. As discussed more fully above, the trial court specifically found: "In order to gain an economic advantage, Elevating Boats, Inc. ("EBI"), through its president, Lynn B. Dean, intentionally, willfully, and fraudulently deprived the citizens of St. Bernard parish of critical tax revenue." In doing so, the court specifically found that "Lynn Dean's testimony was impeached on so many occasions that the Court does not feel he is credible." In contrast, the court expressly believed the testimony of Marvin Acosta and Barbara Duhe. "It is the task of the trial judge to determine the credibility of the witnesses and this determination will not be disturbed absent manifest error." Sevier v. United States Fid. & Guar. Co., 497 So.2d 1380, 1382-83 (La.1986) (quoting Boustany v. Fluid Dynamics, Inc., 392 So.2d 750, 751 (La.App. 3rd Cir.1980)). As we explained in Stobart v. State of Louisiana, Dep't of Transp. and Dev., 617 So.2d 880, 883 (La.1993), "where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong."
Here, the parties do not dispute the fact that sales and use taxes should have been paid to St. Bernard Parish; they only dispute the reason that Elevating Boats failed to pay them. Despite knowing the location of the Parish line and that the operations of the business had moved to St. Bernard Parish in the early 1970s, both Lynn and Doug Dean characterized the failure to pay taxes to St. Bernard Parish as innocent mistakes. On the other hand, Marvin Acosta testified that he was instructed by Lynn Dean not to pay taxes to St. Bernard because the taxes in Plaquemines Parish were lower. More *1165 significantly, Barbara Duhe testified that she knew the filings made between January 1984 and January 1988 were fraudulent at the time she made them and that she made the fraudulent filings at the direction of a superior, Nettie Dean. The trial court believed the version of events from Acosta and Duhe, and it was not manifestly erroneous in that finding.[13] We affirm the trial court's finding of fraud in this case.[14]
Consequently, we must address what effect, if any, the filing of the fraudulent tax returns had on the prescriptive period for collection of sales and use taxes for St. Bernard Parish.[15] Liberative prescription is a procedural bar to an individual's assertion of a legal right or cause of action. The purpose of prescription is to protect an obligor from stale claims or the loss of relevant proof. See Terrel v. Perkins, 96-2629, p. 4 (La.App. 1st Cir.11/7/97), 704 So.2d 35, 38; Masson v. Champion Ins. Co., 591 So.2d 399, 402-03 (La.App. 4th Cir.1991). Because of the nature of prescription, prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be enforced. See Lima v. Schmidt, 595 So.2d 624, 629 (La.1992). Of two possible constructions of a prescription statute, one barring the action and one maintaining it, the statute will be read in such manner as to maintain the obligee's claim. See Lima, 595 So.2d at 629; Foster v. Breaux, 263 La. 1112, 1120, 270 So.2d 526, 529 (1972). With these principles in minds, we turn to the interpretation of the prescription statute at issue in this case: La.Rev.Stat. § 33:2718.4.[16]
The words and phrases of the Revised Statutes are construed according *1166 to the common and approved usage of the language. See La.Rev.Stat. § 1:3. When the words of a statute are clear, they must be applied as written. See La. Rev.Stat. 1:4; Roberts v. State Farm Mut. Auto. Ins. Co., 27,501, p. 4-5 (La.App. 2 Cir. 11/1/95), 662 So.2d 821, 824. In construing legislative enactments, we must assume that the Legislature intended every word, phrase, and clause to have some meaning and that none was inserted by accident. See State v. Texas Co., 205 La. 417, 431, 17 So.2d 569, 573 (1944). Consequently, we will construe every provision of a statute in such a manner so as to give it some effect. See City of Gretna v. Aetna Life Ins. Co., 206 La. 715, 727-28, 20 So.2d 1, 5 (1944); State v. Mestayer, 144 La. 601, 604, 80 So. 891, 892 (1919). Above all else, that interpretation must give a fair and reasonable meaning to the legislation so that the intent of the Legislature is honored. See J.M. Brown Const. Co. v. D & M Mechanical Contractors, Inc., 275 So.2d 401, 404 (La.1975). Applying these principles to § 33:2718.4, we find that the sales and use taxes owed by Elevating Boats for the period between January 1, 1984 and December 31, 1990 had not prescribed when St. Bernard Parish made its assessment on June 13, 1995.
As earlier indicated, § 33:2718.4 provides:
A. Sales and use taxes levied by any political subdivision shall prescribe as of three years from the thirty-first day of December of the year in which such taxes became due.
B. The prescriptive period running against any such sales and use tax shall be interrupted by any of the following:
. . . .
(4) Filing of a false or fraudulent tax return.
. . . .
La.Rev.Stat. § 33:2718.4. This language unmistakably indicates that the filing of a fraudulent tax return shall interrupt "[t]he prescriptive period running against any such sales and use tax." Although the statute clearly mandates an interruption of prescription, the statute does not explain the effect of that interruption, when the prescriptive period begins running again after the interruption, or if the interruption contains a temporal element; thus, we will apply the basic principles of interruption from the Civil Code.
Even though "interruption" is not defined by our Civil Code per se, article 3466 is quite clear in explaining the effect of interruption on a prescriptive period:
Article 3466 Effect of Interruption
If prescription is interrupted the time that has run is not counted. Prescription commences to run anew from the last day of interruption.
La. Civ.Code art. 3466. Under this article, once the interruption of prescription ceases, the entire allowable prescriptive period begins to run anew, notwithstanding any amount of time that my have run before the interruption.[17] More significantly, the article mandates that once interruption has *1167 occurred, the prescriptive period does not begin to run again until "the last day of interruption." The statute at issue in this case, § 33:2718.4, indicates when interruption begins (on the filing of a fraudulent tax return), but it is silent as to when the last day of interruption occurs. Elevating Boats argues that the last day of interruption is the date of the filing of the fraudulent return and, therefore, the prescriptive period on the taxes begins to run anew at the moment the fraudulent tax return is filed. We disagree.
To adopt Elevating Boats's interpretation of § 33:2718.4(B)(4) would render the provision virtually meaningless. Under the plain language of the statute, a taxpayer filing a non-fraudulent return on February 20, 1987 would have any unpaid taxes from that return prescribe on December 31, 1990. Similarly, under Elevating Boats's interpretation, a taxpayer filing a fraudulent return on February 20, 1987 would have those taxes interrupted at the moment of filing, have the prescriptive period begin running again immediately, and have the taxes that should have been reported on the fraudulent return also prescribe on December 31, 1990. Thus, under Elevating Boats's interpretation, § 33:2718.4 provides no advantage to the taxing authority upon the filing of a fraudulent return. In fact, the only situation in which the filing of a fraudulent return would give the taxing authority the benefit of a longer prescriptive period is in the rare case where the fraudulent return is filed after December 31st of the year in which it was due (for instance, where the January 1987 return is both fraudulently and untimely filed after December 31, 1987). The Legislature surely intended § 33:2718.4(B)(4) to have a more significant application than the limited one such an interpretation would provide. See City of Gretna, 206 La. at 727-28, 20 So.2d at 5; Texas Co., 205 La. at 431, 17 So.2d at 573. Further, we construe prescriptive statutes in favor of maintaining a cause of action when possible. See Lima, 595 So.2d at 629; Foster, 263 La. at 1120, 270 So.2d at 529. Consequently, we will honor what surely was the Legislature's intent in regard to this statute by interpreting § 33:2718.4 as not permitting a fraudulent taxpayer to be treated the same as an honest one.
Instead, we find that, under § 33:2718.4(B)(4), the filing of a fraudulent tax return interrupts the prescriptive period running on the sales and use taxes that should have been reflected on that return, had it not been fraudulent, and that the interruption continues until the taxpayer cures the fraud (the act causing the interruption) through the filing of an amended, non-fraudulent return. This interpretation grants the taxing authority three years from the date a non-fraudulent representation of taxes owed is madea period consistent with the general prescriptive period found in the Constitution and Revised *1168 Statutes.[18] In this case, we have affirmed the trial court's finding that Elevating Boats filed fraudulent sales and use tax returns monthly regarding transactions from January 1, 1984 to August 31, 1994; thus, the prescriptive periods on the tax obligations for each of those months were interrupted at the time of the filing of the respective fraudulent returns. Further, because Elevating Boats took no action to cure the fraud that caused the interruption, the obligations had not prescribed when the Sheriff filed the assessment in June of 1995.
We are aware of Poirier v. Collector of Revenue, 417 So.2d 410, 411 (La.App. 1st Cir.1982), a court of appeal opinion which found that a similar statute regarding state income taxes would permit an immediate interruption of the prescriptive period on the filing of a fraudulent return and which construed the statute to allow prescription to begin running again immediately upon the filing. We see no need to overrule Poirier, however, because it was overruled by the Legislature with 1983 La. Acts No. 396, § 1. To the extent that we might address it, we do so as follows. The Poirier court reasoned:
The prescription in this case was interrupted on April 25, 1967 when the false return was filed. An interruption means the previous time running was eradicated and the prescriptive period begins running anew from the time of the interruption. Hotard v. Fleitas, Inc., 67 So.2d 345 (La.App.Orleans Cir. 1953). Therefore, even though the prescription was interrupted on April 25, 1967, it began to run again and the three year period ended on April 25, 1970.
Poirier, 417 So.2d at 411. Thus, the basis of the Poirier court's reasoning was that, following interruption, prescription begins running again "from the time of interruption," thus, implying that interruption is an instant occurrence without a time frame component. We disagree with the court's reasoning based on the current language of our Civil Code.
The Civil Code does not state that prescription begins to run anew "from the time of interruption." The Code states that the period runs "from the last day of interruption." La. Civ.Code art. 3466 (emphasis added). The emphasized language contemplates that interruption is more than simply an instant event; it is an event with a temporal significance.[19] Therefore, we disagree with the Poirier court's analysis and instead find that the prescriptive periods on the sales and use tax obligations for each of the months at issue were interrupted at the time of the filing of the fraudulent return pursuant to § 33:2718.4(B)(4).[20] Further, because Elevating *1169 Boats took no action to cure the fraud which caused the interruption, the interruption was continuous, and the obligations had not prescribed when the Sheriff filed the assessment in June of 1995. Consequently, the sales and use taxes owed from January 1, 1984 to December 31, 1990 are not prescribed. The court of appeal's ruling on this issue is reversed.

II. Prescription of the Use Tax on Certain Fixed Asset Purchases Not Reported to Any Parish
As discussed above, between 1984 and 1994, Elevating Boats filed its sales and use tax returns with Plaquemines Parish, not St. Bernard Parish. On the returns filed in Plaquemines, Elevating Boats disclosed most of its transactions subject to a use tax. However, certain fixed asset purchases during that time period were not reported to Plaquemines Parish, or any other parish, even though properly taxable by St. Bernard Parish. The issue presented is whether the use taxes regarding those certain fixed assets were prescribed when the Sheriff made his assessments. It appears from Exhibits C-1 to C-11 of the joint stipulation of the parties that a total of $2,470,083.54 in fixed asset purchases was made during this period of time and not reported to Plaquemines Parish, St. Bernard Parish, or any other parish. Under the St. Bernard Parish ordinances, if those assets are "tangible personal property," they were subject to a use tax at the time they were brought into St. Bernard Parish. This Court has already ruled in City of New Orleans v. Baumer Foods, Inc., 532 So.2d 1381, 1385 (La.1988), that "tangible personal property" includes fixed asset additions for the purpose of a use tax.[21] In fact, the parties agree that the fixed assets not reported to St. Bernard Parish were subject to a use tax. The only issue before us is whether or not the taxes have prescribed.
The parties have focused their dispute on whether Elevating Boats's failure to report these fixed asset acquisitions was fraudulent. The Sheriff points out that the first of the fixed asset purchases at issue was a Toshiba Lathe HBM in July 1984, just four months after Elevating Boats, after an audit, had paid the Louisiana Department of Revenue and Taxation $25,614.32 in overdue use taxes for fixed assets earlier acquired. Finding that the State audit would have put Elevating Boats on notice that fixed asset acquisitions were subject to a use tax, the district court concluded that the failure to pay in this circumstance was "clearly an indication of fraud." However, the court of appeal reversed that ruling, reasoning that Elevating Boats handled the purchases properly under the circumstances. We will resolve this issue regarding this portion *1170 of Elevating Boats's use tax obligation to St. Bernard Parish without reaching the issue of a possible fraud in not reporting these assets to Plaquemines Parish.
Our resolution of this issue is based upon our holding above concerning the effect of Elevating Boats's filing of fraudulent returns in St. Bernard Parish. As discussed above, when Elevating Boats filed a fraudulent sales and use tax return with St. Bernard Parish, that act was sufficient to interrupt the prescriptive period against any sales and use tax that should have been reflected on that fraudulent return. See supra p. 21-22. Under the St. Bernard Parish sales and use tax ordinance, the use tax for the fixed assets at issue became due on the twentieth of the month after the asset was brought into the Parish. See St. Bernard Parish Sales and Use Tax Ordinance § 6.01. Further, when fraudulent returns were filed indicating that no sales or use taxes were owed to the Parish, that act constituted an interruption of prescription as to any sales or use taxes owed that should have been reflected on that return, including the use tax owed for the fixed assets at issue here. For example, fixed assets purchased and not reported to Plaquemines Parish (or any other parish) in July of 1986 totaled $177,069.84, and the tax on those assets became due on August 20, 1986. The fraudulent sales and use tax return filed in August of 1986 with St. Bernard Parish served to interrupt the prescriptive period on all the sales and use tax that should have been reflected on that return, including the $177,069.84 in fixed assets brought into St. Bernard Parish during July of 1986 and not reported to Plaquemines Parish. Whether the $177,069.84 was innocently omitted from the Plaquemines Parish return is wholly irrelevant to prescription of the use tax obligation in St. Bernard. That prescriptive period was interrupted on the filing of the fraudulent return, and that filing affected all use taxes that should have been reflected on that return (whether or not reported to another parish). Further, because Elevating Boats took no action to amend its fraudulent returns, the use taxes on the fixed assets not reported in St. Bernard Parish were not prescribed when the Sheriff, on December 30, 1994, filed the Rule for Taxes for the years 1991, 1992, 1993, and the first part of 1994 or when he made the assessment for taxes for an additional seven years on June 13, 1995. We reverse the court of appeal's ruling to the contrary.

III. Occupational License Taxes
The Revised Statutes permit local municipalities and parishes to impose occupational license taxes on all businesses within their jurisdiction. See La.Rev.Stat. § 47:341(A). The amount of the tax is based on the type of business being conducted and the level of gross sales generated by the business within the preceding calendar year. The parties stipulated at trial to the amount of gross sales by Elevating Boats for all of the years in question. In contrast, the parties disputed whether Elevating Boats is a "retail dealer in merchandise, services, and rentals" subject to the tax of La.Rev.Stat. § 47:354 or a "wholesale dealer in merchandise, service, and rentals" subject to the tax of § 47:355. Under §§ 47:354 & 355, a retailer pays roughly three times as much for an occupational license tax as a wholesaler. Before addressing this issue, we must determine if any of the taxes have prescribed.

A. Prescription
Unlike sales and use taxes, the Revised Statutes regarding occupational license taxes provide no counterpart to § 33:2718.4's interruption of the prescriptive period on the filing of a fraudulent *1171 sales and use tax return. Thus, the general provision in the Constitution controls:
Taxes, except real property taxes, and licenses shall prescribe in three years after the thirty-first day of December in the year in which they are due, but prescription may be interrupted or suspended as provided by law.
La. Const. art. VII, § 16. According to La.Rev.Stat. § 47:343, the occupational license taxes are due on January 1st of every year and are considered delinquent if not paid by the last day of February in the year due. Thus, the prescriptive period on occupational license taxes is just one day short of four years (i.e. taxes due January 1, 1995 prescribe on December 31, 1998). The Rule for Taxes covered years 1991-1994 and the occupational license taxes for the earliest year in that Rule, 1991, were due on January 1, 1991 and set to prescribe on December 31, 1994. Thus, the occupational license taxes sought in that Rule were not prescribed when the Rule was filed on December 30, 1994.
The assessment on June 13, 1995 of the occupational license taxes was for the tax years 1988 to 1990.[22] Occupational license taxes for the latest year in the assessment, 1990, were due on January 1, 1990 and set to prescribe on December 31, 1993. Thus, unless prescription has been interrupted or suspended, the occupational license taxes for the years 1988 to 1990 were prescribed when the assessment was made on June 13, 1995. As pointed out above, there is no counterpart to La.Rev.Stat. § 33:2718.4 regarding occupational license taxes. Thus, the three year prescriptive period in the Constitution applies and the occupational license taxes for the tax years 1988 to 1990 are prescribed. We now turn to the dispute regarding the amount of the occupational license tax for the four unprescribed years: 1991, 1992, 1993, and 1994.

B. The Amount of the Occupational License Tax
The amount of the delinquent occupational license taxes depends upon whether Elevating Boats is a retailer (the district court's finding) or a wholesaler (the court of appeal's finding). Retail dealers in merchandise, services, and rentals include: "[b]usinesses engaged in leasing, renting, or licensing the use of movable property," "[r]epair businesses," "[r]etail dealers in boats," and "[t]ransportation businesses" among others. See La.Rev.Stat. § 47:354(B)(28), (41), (43), & (58). On the other hand, a wholesale dealer in merchandise, services, or rentals is "any person who sells [merchandise, services, or rentals] to other dealers who in turn resell" and includes "retail or wholesale dealers in building materials" and "shipbuilders" among others. See La.Rev.Stat. §§ 47:342(12), 355(B)(1). Finally, the occupational license tax must be based on the type of business activity "which constitutes the major portion of the gross receipts, fees, or commission" of the business. See La.Rev.Stat. § 47:347; see also id. at § 47:346.
At trial, the Sheriffs expert witness in accounting and auditing, James J. Hand, III, a certified public accountant, testified that he determined that Elevating Boats was a retailer pursuant to La.Rev.Stat. § 47:354. Primarily, he based this conclusion on the fact that Nettie Dean identified Elevating Boats as a retailer in the occupational license application filed in St. Bernard Parish in August of 1994. Further, *1172 he noted that Elevating Boats's chief business is the rental of boats, which is a retail activity under § 47:354. Therefore, he concluded that Elevating Boats was a retailer.
On the other hand, Ray Ladouceur, also a certified public accountant, was called by Elevating Boats as an expert witness in accounting and occupational license tax matters. Ladouceur testified that Elevating Boats is a wholesaler pursuant to La. Rev.Stat. § 47:355 based upon his discussions with Doug Dean. Specifically, Dean conveyed to him that Elevating Boats's primary business activity was the building of ships, a business specifically described as a wholesaler's activity in § 47:355. Further, Ladouceur noted that his understanding of the business was that its rental activity involved renting boats to entities that, in turn, rented them to other individuals or companies. Thus, he concluded that Elevating Boats was a wholesaler.
Hilton T. Ponthier, a certified public accountant called by Elevating Boats to testify regarding the fixed asset additions portion of this case, testified on cross examination regarding Elevating Boats's business activities. Specifically, Ponthier, Elevating Boats's own witness, admitted that his examination of the records of Elevating Boats led him to conclude that over half of Elevating Boats's income is derived from the leasing or renting of elevating boats. The renting of movable property is an activity of a retailer under La.Rev.Stat. § 47:354. Based on the testimony of the three experts, the district court concluded that Elevating Boats was a retailer pursuant to La.Rev.Stat. § 47:354.
The determination of whether or not Elevating Boats is a wholesaler or a retailer is a mixed question of law and fact, and the district court's ruling is entitled to deference by the appellate courts. See Carbon v. Allstate Ins. Co., 97-3085, p. 10 n. 3 (La.10/20/98), 719 So.2d 437, 442 n. 3; Boykin v. Louisiana Transit Co., 96-1932, p. 11 (La.3/4/98), 707 So.2d 1225, 1231. The testimony and exhibits at trial support the finding of the district court that Elevating Boats is a retailer subject to the tax of La.Rev.Stat. § 47:354; thus, we find no manifest error in the trial judge's conclusion in this regard. Therefore, we reinstate the trial court's judgment.[23]

IV. Inter-Parish Credit
Elevating Boats has argued that, if it is held accountable to St. Bernard Parish for the sales and use taxes from the years 1984-1994, it should, pursuant to La.Rev.Stat. § 33:2718.2, receive credit for the taxes it paid to Plaquemines Parish during that same period. La.Rev.Stat. § 33:2718.2 states:
A credit against the sales and use tax imposed by any political subdivision of the state shall be granted to a taxpayer who paid monies, whether or not paid in error, absent bad faith, based upon a similar tax, levy or assessment upon the same tangible personal property in a political subdivision of another state, or a political subdivision of this state.
La.Rev.Stat. § 33:2718.2(A). The statute provides for a specific procedure to be followed by an applicant seeking to obtain the credit. First, the taxpayer must make a formal request for a refund by certified mail including all evidence supporting the claim. See La.Rev.Stat. § 33:2718.2(E)(1)(a). Second, if no response *1173 is received within sixty days, the taxpayer must send another formal request, again by certified mail. See La. Rev.Stat. § 33:2718.2(E)(1)(b). Finally, the taxpayer must provide the municipality from which he seeks a credit the response from the municipality paid in error or an affidavit stating that no such response was received. See La.Rev.Stat. § 33:2718.2(E)(1)(c). In this case, the record is devoid of any evidence indicating that Elevating Boats made any formal demands of Plaquemines Parish in accordance with § 33:2718.2.[24] Based on the fact that these procedures were not followed, we deny Elevating Boats's request for an inter-parish credit against its sales and use tax indebtedness to St. Bernard Parish and reinstate the district court's judgment accordingly.[25]

V. Interest, Penalties, and Attorney Fees
The final issue that we determine must be resolved in this case is the trial court's assessment of 15% interest and 10% attorney fees on the tax obligation of Elevating Boats. The St. Bernard Parish ordinance pertaining to penalties, interest, and attorney fees provides:
If the amount of the tax due by the dealer is not paid on or before the twentieth (20th) day of the month next following the month for which the tax is due, there shall be collected, with said tax, interest upon said unpaid amount, at the rate of six percent (6%) per annum, or fractional part thereof, [and] there shall also be collected a penalty equivalent to five percent (5%) for each thirty (30) days, ... not to exceed twenty-five percent (25%) in aggregate, of the tax due, ... and in the event of suit, attorneys' fees at the rate of ten percent (10%) of the aggregate of tax, interest and penalty.
St. Bernard Parish Sales and Use Tax Ordinance § 9.03 (emphasis added). Thus, in total, the Parish ordinance permits the imposition of a maximum of a 6% annual interest penalty as well as a one time delinquency penalty of 25% and attorneys fees totaling 10% of tax, interest, and penalties at collection. In contrast, the state statute pertaining to penalties for unpaid local government sales and use taxes provides:
Upon local taxes not paid and delinquent thirty days after the date upon which the tax is due, there shall be an interest penalty of one and one-quarter percent per month on the amount of the tax due, which shall be collected by the tax recipient body, together with and in the same manner as the tax.
La.Rev.Stat. § 33:2746 (emphasis added). Thus, this statute regarding unpaid local government sales and use taxes permits the imposition by a local governing authority of a 15% interest penalty alone over a year's time (1¼% per month).
We have addressed, in earlier cases, conflicts between a state statute and a parish ordinance regarding sales and use *1174 taxes. In BP Oil Co. v. Plaquemines Parish Government, 93-1109 (La.9/6/94), 651 So.2d 1322, the Plaquemines Parish's sales and use tax ordinance granted the taxpayer one rate of interest for a refund owed for overpayment of taxes. In contrast, the Revised Statutes set a higher level of interest to be given a taxpayer in such a situation. In resolving this conflict, we found:
[A] local government, while constitutionally empowered to levy a local use tax without legislative authorization and to fix the rate of the tax, cannot go beyond the taxing limits set by the Legislature. In La.Rev.Stat. 33:2718A(2), which is found in the Sales Tax Section of the Chapter of Title 13 on Taxation and Fiscal Affairs, the Legislature fixed the interest rate generally on tax refunds or credits. Therefore, the Parish's fixing of the rate of interest on refunds to taxpayers on local use taxes at less than the amount fixed by the Legislature is invalid, and the statute prevails in the event of conflict.
BP Oil Co., 93-1109 at p. 19-20, 651 So.2d at 1333. While upholding the state statute over the local ordinance in BP Oil, we reasoned that a Parish ordinance could not be less beneficial to the taxpayer than state law required. Therefore, we found that the rate of interest due on the taxpayer's refund pursuant to state law would control.
We find that the Parish's combined interest, penalty, and attorney fees cannot exceed the 15% interest penalties permitted by La.Rev.Stat. § 33:2746. Just as the parish ordinance cannot be less beneficial to the taxpayer than a state statute regarding refunds, it similarly cannot be more burdensome regarding delinquencies. In this case, the Parish ordinance permits a 6% per annum interest charge, a 25% maximum delinquency penalty geared to the length of delay, and a 10% attorney fee in the event of a lawsuit. The state statute, on the other hand, permits only a 15% annual "interest penalty" (1¼% per month). We find that the Parish ordinance's increased burden on the taxpayer is impermissible and that the state statute's 15% interest penalty sets the maximum allowable burden for delinquent taxes. Therefore, Elevating Boats is responsible for no more than the 15% interest penalty permitted by La.Rev.Stat. § 33:2746. We will remand to the district court for a determination of the exact amount owed.

Conclusion
For over a decade, on a monthly basis, Elevating Boats fraudulently misrepresented to the Parish of St. Bernard that it had no sales or use tax transactions within the Parish. For the reasons expressed in this opinion, the St. Bernard Parish Sheriffs claims for taxes owed by Elevating Boats for the years 1984 through 1994 were not prescribed. We have further reinstated the district court's conclusion that Elevating Boats operated chiefly as a retailer within the Parish and its occupational license tax is that which is applicable to retailers, not wholesalers. However, we find that the occupational license taxes for the years prior to 1991 are prescribed. We also find that Elevating Boats has failed to follow the procedures necessary to avail itself of an inter-parish credit for sales and use taxes paid to Plaquemines Parish that were part of what should have been paid to St. Bernard Parish. Finally, we find that Elevating Boats is legally responsible for no more than a 15% annual interest penalty on the unpaid taxes. Thus, we reverse the court of appeal judgment and reinstate the district court judgment in part finding that Elevating Boats owed St. Bernard Parish past due sales and use taxes, a portion of the occupational license taxes at issue, and 15% *1175 annual interest penalty on the past due obligations.
We remand to the district court for a determination of the precise amount of sales and use taxes, occupational license taxes, and interest penalties owed by Elevating Boats consistent with this opinion. We further order the district court to enter a judgment in favor of Elevating Boats and against St. Bernard Parish for the difference between the $1,956,805.00 paid under protest and the actual amount of tax and interest penalties owed as will be determined by the district court consistent with this opinion. Although the majority of Elevating Boats's claims have been denied, it is entitled to a portion of the money paid to the Sheriff under protest. Consequently, the district court should allocate half of the costs of the proceedings against each of the parties in accord with La.Rev.Stat. § 13:5112(A).

DECREE
For the foregoing reasons, we reverse the court of appeal's judgment and reinstate the district court's judgment that the sales and use tax obligation of Elevating Boats, Inc. to St. Bernard Parish, including an annual interest penalty, is not prescribed. We further reverse the court of appeal's judgment and reinstate the district court's judgment that Elevating Boats is a retailer for occupational license tax purposes; however, we find that the occupational license taxes prior to 1991 are prescribed. Finally, we find that an interparish credit is not due Elevating Boats, Inc. This matter is remanded to the district court with instructions to enter a judgment in favor of Elevating Boats, Inc. against the Parish of St. Bernard for the difference between the $1,956,805.00 paid under protest and the past due taxes owed including 15% annual interest penalty. Finally, the district court should allocate the costs of these proceedings equally between the parties.
COURT OF APPEAL JUDGMENT REVERSED; DISTRICT COURT JUDGMENT REINSTATED IN PART; CASE REMANDED TO THE DISTRICT COURT.
VICTORY, J., dissents in part and assigns reasons.
VICTORY, J., dissenting in part.[*]
I dissent from that portion of the majority opinion dealing with the prescription of sales and use taxes. I find no support in the Civil Code to persuade me that the concept of continuous interruption should be applied under these circumstances. La. Civil Code art. 3466, upon which the majority relies, was adopted in 1982. The official comments to the article indicate that it was not intended to change the law. Moreover comment (b) expressly notes a "well settled" jurisprudential rule that when prescription is interrupted, it "commences to run anew from the date of the interruption."
Since article 3466 was not intended to change the law, it is also helpful to consult the views of respected commentators. Planiol teaches that as a general rule, once an act occurs that interrupts prescription, "it recommences to run immediately ..." 2 Planiol, Traite Elementaire de Droit Civil, part I, No. 672 (La. Law Institute translation, 1959). It is clear that the interruptions in question in this case occurred on the discrete dates when the incorrect returns were filed. Accordingly, the new periods of prescription commenced on those same dates.
*1176 There is no convincing reason to deviate from the general rule that the statute of limitations commences to run anew immediately after the act that interrupts the initial period. The majority's argument that a different rule should apply because the legislature must "surely" have intended such a result when it enacted La. R.S. 33:2718.4 is grounded in sheer speculation. If the legislature did not intend the statute to be interpreted in accord with established principles, it could have provided for a "continuous interruption" rule in the statute. The result which the majority regards as anomalous commends itself to the sound discretion of the legislature and its amendatory processes, not to this Court.
Finally, I believe the result reached by the majority dictates an even more absurd result than the one the majority seeks to avoid. The majority suggests that an interruption in a case such as this will continue until the debtor takes action to affirmatively disgorge his fraudulent conduct. Were that the case, a parish could accept a fraudulent return and, even after discovering the fraud, wait indefinitely to seek redress. The rule advanced by the majority relieves a parish of any responsibility whatsoever, even where it knows or could reasonably discover the taxpayer error. The parish could conceivably wait 100 years, or longer, to prosecute a known fraud. In my view, the majority's rule goes too far. I believe it more appropriate to interpret the statute in accord with general principles and to await legislative correction of any perceived problems, inasmuch as the legislature is the body constitutionally charged with such responsibilities.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.

Judge Felicia Toney Williams, of the Second Circuit Court of Appeal, assigned as Justice Pro Tempore, sitting for Associate Justice Bernette J. Johnson.
[1] The undisputed evidence in the record does not support the proposition that any of the operational buildings of the Elevating Boats plant at issue in this case are located either wholly or partially within Plaquemines Parish.
[2] It has since been stipulated by the parties that 87.28% of Elevating Boats's sales between 1984 and 1994 were taxable by St. Bernard Parish. See infra pp. 1159-60.
[3] The parish ordinance permits the Sheriff to estimate the amount of the taxes owed by a dealer when the dealer fails to file a return or files a grossly incorrect, false, or fraudulent return with the Sheriff. See St. Bernard Parish Sales and Use Tax Ordinance § 9.04.
[4] This petition included a claim that Elevating Boats was entitled to damages under 42 U.S.C. § 1983 for a deprivation of constitutional rights. That part of the suit was dismissed and therefore is no longer involved in this dispute.
[5] Lynn Dean has held public office in various capacities in St. Bernard Parish for over twenty years and is currently a State Senator representing that area. The St. Bernard Parish domicile that he has consistently provided on his Notice of Candidacy forms has been the same address as the registered office for Elevating Boats provided in its articles of incorporation and its annual reports filed with the Louisiana Secretary of State.
[6] It has been stipulated by Elevating Boats that during 1987 it reported $260,997.77 in purchases subject to a use tax in filings made in Plaquemines Parish. These filings in the wrong parish resulted in use tax payments of $5,219.96 during the year Lynn Dean claims to have had no knowledge of the meaning of the term "use tax ."

Further, the record indicates that in early 1984, the Louisiana Department of Revenue and Taxation audited the records of Elevating Boats. Following that audit, Elevating Boats paid $25,614.32 in past due use taxes to the State.
[7] Exhibits to the Stipulation of the parties at trial indicates that the Plaquemines Parish's sales and use tax rate was lower than that of St. Bernard Parish at all times pertinent to this case. Specifically, the St. Bernard Parish sales and use tax rate began at 3.0% in 1984, was raised in 1990 to 3.5%, raised again in 1991 to 4.0%, and finally raised again in 1993 to 4.5%. In contrast, the Plaquemines Parish sales and use tax rate began at 2.0% in 1984 and was only raised once, in April of 1992, to 3.0%.
[8] Hilton T. Ponthier, one of Elevating Boats's experts in accounting and the same expert who calculated the 87.28% stipulated figure above, testified, although this figure was not part of the stipulation, that only 3.67% of sales at Elevating Boats were actually taxable by Plaquemines Parish.
[9] While the district court judgment is largely in favor of St. Bernard Parish, it also provides Elevating Boats with some relief. As mentioned earlier, Elevating Boats made two payments under protest to Sheriff Stephens totaling $1,956,805.00. The district court's judgment finding that Elevating Boats actually owed the Sheriff $1,459,586.50 means that Elevating Boats would have been entitled to a refund of $497,218.50 under that judgment.

Although not specifically discussed in the record or the reasons for judgment, the differences between the amount assessed by the Sheriff and the amount actually due, as determined by the district court, appear to arise from the fact that Sheriff Stephens was forced to estimate the amount of taxes due from 1984 to 1990.
[10] As we will discuss infra, the sales and use taxes sought by the Sheriff for transactions between January 1, 1991 and August 31, 1994 are clearly not prescribed and Elevating Boats does not contest them.
[11] The assessment by the Sheriff covered taxes on transactions as far back as January 1, 1984. Prior to the effective date of La.Rev. Stat. § 33:2718.4, August 1, 1985, no predecessor to this statute existed, and only the Constitution's three-year general prescriptive period, without reference to interruption or suspension, existed. Thus, if the statute does not apply to taxes due before August 1, 1985, those taxes would be subject only to the Constitution's three-year prescriptive period. On the other hand, if the statute does apply to those taxes due before its enactment, it may, potentially, permit the otherwise prescribed tax obligations to be viable as a result of interruption or suspension.
[12] Principles of fairness and equity combined with constitutional considerations have led us to find that statutes shortening a prescriptive period may be impermissible absent a transitional period sufficient to permit a claimant to seek judicial enforcement of a claim otherwise adversely affected by the new prescriptive period. SeeFalgout v. Dealers Truck Equip. Co., 98-3150, p. 12 (La.10/19/99), 748 So.2d 399, 407-08; Lott v. Haley, 370 So.2d 521, 524 (La.1979). Because the legislation at issue in this case lengthened the time period in which the claimant may seek enforcement of a claim, that line of jurisprudence is not pertinent to our discussion.
[13] At oral argument, counsel for Elevating Boats briefly argued that his client's purported fraud could not have been an economic advantage to Elevating Boats because the company is not paying sales taxes out of its own pocket, but instead, simply paying to a taxing authority money that has been previously collected from consumers. We disagree for two reasons.

First, by charging the lower tax rate from Plaquemines Parish, Elevating Boats was able to offer consumers a lower total cost for products than other competitors in the parish who charged the higher St. Bernard sales tax rate. This resulted in an advantage over other businesses and/or business competitors in the region and outside Plaquemines Parish. In all events, economic advantage or not to Elevating Boats, St. Bernard suffered a loss by being deprived of significant tax revenue by virtue of this fraud.
Second, and more significantly, the lower tax rate in Plaquemines Parish also applied to use taxes, a tax burden that rests squarely on the Elevating Boats's shoulders. Thus, for example, when Elevating Boats had $2,123,783.57 of purchases subject to a use tax in 1990, under the Plaquemines Parish rate of 2%, it paid a total of $42,475.67 in use taxes. Had Elevating Boats paid the St. Bernard Parish use tax at the rate of 3.5%, its use tax obligation would have been $74,332.42. Thus, by paying the taxes to the wrong parish, Elevating Boats saved $31,856.75 in 1990 alone.
[14] We point out that whether or not Duhe and Acosta were actually instructed by Lynn or Doug Dean to file fraudulent returns is immaterial. The more significant fact is that Duhe and Acosta both testified that when they made the filings, they were aware the returns were fraudulent. Whether the misrepresentations were included by their own volition or at the direction of their supervisors, Duhe and Acosta were acting on behalf of Elevating Boats. Therefore, the trial court's conclusion that Elevating Boats filed fraudulent returns is correct.
[15] Because we have affirmed the trial court's conclusion that Elevating Boats filed fraudulent tax returns, we need not address the scope or application of § 33:2718.4(B)(4)'s interruption of prescription for the filing a "false" return.
[16] Elevating Boats has asserted that, according to our jurisprudence, any ambiguity in § 33:2718.4 must be resolved in favor of the taxpayer. In actuality, the rule recognized by this Court is that only taxation statutes imposing a tax are construed in favor of the taxpayer. See McNamara v. Central Marine Serv., Inc., 507 So.2d 207, 208 (La.1987). Statutes providing an exception from taxation are construed strictly against the taxpayer. See Vulcan Foundry, Inc. v. McNamara, 414 So.2d 1193, 1197 (La.1981) (on rehearing). The dispute in this case, as it pertains to the interpretation of a prescription statute, does not concern any arguable ambiguity in the nature, scope, or imposition of the sales and use tax in St. Bernard Parish, but rather involves our interpretation of whether a procedural bar exists to the enforcement of an otherwise valid claim. Therefore, a construction of the statute that favors the taxpayer, Elevating Boats, is not in order.
[17] It is this attribute of interruption that distinguishes it from the other method of stopping the running of prescription: suspension.

The basic difference between interruption and suspension of prescription is the length of the prescriptive period when prescription begins to run anew. When prescription is interrupted, the prescriptive period starts over in its entirety upon cessation of the interruption. Thus, when a one-year prescriptive period is interrupted at any time during the year by the filing of suit and the suit is subsequently dismissed without prejudice, the plaintiff has another full year in which to bring another suit, and that second one-year period begins to run from the last day of interruption. See La. Civ.Code art. 3466. On the other hand, if a one-year prescriptive period is suspended for any reason, the "clock" merely stops during the suspension and starts again at the cessation of the suspension, so that the obligee has only so much of the one year as was remaining when the suspension began. Only the period of suspension is not counted toward the accrual of prescription. See La. Civ.Code art. 3472.
Louviere v. Shell Oil Co., 440 So.2d 93, 97 n. 8 (La.1983).
[18] We note that this result is similar to the federal approach to the statute of limitations for the assessment of taxes when fraudulent personal income tax returns have been filed. Under federal law, the Internal Revenue Service is permitted to make an assessment for unpaid taxes within three years of the returns being filed. See 26 U.S.C. § 6501(a). However, "[i]n the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time." See id. at § 6501(c)(1) (emphasis added).
[19] The comments to article 3466 are even more persuasive. The comments indicate that the source of Louisiana Civil Code article 3466 is article 270 of the Greek Civil Code. See La. Civ.Code art. 3466 cmt. a. Article 270 states: "When prescription is interrupted, the time that has run is not counted, and, from the end of the interruption, a new prescription commences to run." See La. Civ.Code art. 3466 cmt. c (emphasis added).
[20] Admittedly, the codal language upon which we rely in part for today's decision, article 3466 of the Civil Code, was not enacted until the year after the Poirier decision was handed down. See 1982 La. Acts 187, § 1 (effective January 1, 1983 and enacting La. Civ.Code art.3466).
[21] In Baumer Foods, the New Orleans city sales and use tax ordinance defined "tangible personal property" as:

"Tangible personal property" means and includes personal property which may be seen, weighed, measured, felt or touched, or is in any other manner perceptible to the senses. The term "tangible personal property" shall not include stocks, bonds, notes or other obligations or securities.
Baumer Foods, 532 So.2d at 1383. The St. Bernard Parish sales and use tax ordinance similarly defines "tangible personal property" as:
"Tangible Personal Property" shall mean and include personal property which may be seen, weighed, measured, felt or touches [sic], touched, or is in any manner perceptible to the senses. The term "tangible personal property" shall not include the sale at retail of that property in the regular course of business.
St. Bernard Parish Sales and Use Tax Ordinance § 1.21. The slight differences in the two definitions are not pertinent to the instant case.
[22] Although the language of the Sheriff's assessment appears to suggest he seeks occupational license taxes as far back as 1984, St. Bernard Parish instituted its occupational license tax beginning with the tax year 1988. See St. Bernard Parish Ordinance OPC-3-87 (April 7, 1987) (effective January 1, 1988).
[23] We also note that Elevating Boats's brief on the merits states that "[t]he main portion of EBI's work is the rental of elevating boats." Brief for Respondent at 3, Elevating Boats, Inc. v. St. Bernard Parish, La. 00-3518 (filed 4/23/01). Businesses engaged in the rental of movable property are specifically identified as retail businesses by the Revised Statutes. See La.Rev.Stat. § 47:354(B)(28).
[24] Although not necessary to our holding, we also note in passing that § 33:2718.2 only permits an inter-parish credit to be awarded to a party "absent bad faith." For the reasons expressed more fully supra, Elevating Boats would not be able to satisfy this requirement under this statute.
[25] We emphasize here that our ruling on the inter-parish credit is based on the fact that Elevating Boats did not follow the dictates of La.Rev.Stat. § 33:2718.2 in seeking the credit for taxes paid to Plaquemines Parish. While we do not express an opinion as to the correct result of any proceedings not before us now, we hasten to point out that Elevating Boats may yet succeed in receiving a refund of taxes improperly paid to Plaquemines Parish in the pending lawsuit for such recovery that Elevating Boats has initiated against Plaquemines Parish.
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.

Judge Felicia Toney Williams, of the Second Circuit Court of Appeal, assigned as Justice Pro Tempore, sitting for Associate Justice Bernette J. Johnson.